**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| ROBERT S. JOHNSON | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | No. 07 C 3996 |
| | ) | |
| | ) | JUDGE GUZMÁN |
| v. | ) | |
| | ) | |
| GDF, INC. d/b/a DOMINO'S PIZZA | ) | |
| Defendant. | ) | |

**MOTION FOR ATTORNEYS' FEES AND
MOTION FOR EVIDENTIARY HEARING ON THEREON[1]**

**I.    PROCEDURAL HISTORY**

This matter returns to the district court by agreement of the parties to determine the amount of attorney's fees to be assessed in this retaliation case under the Fair Labor Standards Act, 29 U.S.C. 215(a)(3) ["FLSA"]. The FLSA provides, 29 U.S.C 216(b), "[T]he court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." In this case, plaintiff has obtained a judgment and he is entitled to a reasonable fee and reimbursement of costs.

After plaintiff obtained a favorable jury verdict, including punitive damages, the district court denied defendant's motion for judgment as a matter of law as well as plaintiff's motion for liquidated damages. Defendant appealed to the Seventh Circuit and plaintiff cross-appealed. On May 5, 2010 the Seventh Circuit conducted a mediation conference. Defendant wished to moot the appeals, and avoid additional attorney's fees on appeal, by paying the full amounts due. The parties have agreed to dismiss the appeals in the Seventh Circuit once the district court takes this

---

[1] Defendant has stated that they will call the plaintiff as a witness against Mr. Rossiello in this motion. See, Ex. C. Hence, for this reason and the belief there may be inappropriate collision or collaboration between plaintiff and defendant, or their attorneys, an evidentiary hearing is requested. See, Affidavit of Janet M. Ahlgren, Exs. Y and Z (Email from AT&T showing

motion under advisement. [In defendant's LR54.3(e) (N.D. Ill.) statement, Ex. A-2, p.3, defendant merely stated that the parties had agreed to dismiss the appeals. More than that occurred. In consideration of the dismissal of both appeals, defendant will pay liquidated damages to the plaintiff, the amount of the verdict, interest thereon through May 30, 2010 and the clerk's filing fee of $455.00 incurred by plaintiff in filing the notice of the appeal.] The briefing schedule in the court of appeals has been suspended until such time as this court takes sets this motion for briefing, at which time the payment is due. [2]

## II. THE PARTIES' COMPLIANCE WITH LR 54.3(e) (N.D., Ill.)

Before bringing this motion, the parties complied with LR54.3 (N.D. Ill.). They could not settle the fee issue. Exhibit A consists of the two joint statements prepared by the parties. A-2 is as of May 30, 2010 and A-1 as of November 30 2009, respectively.[3] As of November 30, 2009, plaintiff had incurred $82,921.90 in fees and costs. Ex. A-1. After mediation in the Seventh Circuit, as of July 8, 2010, plaintiff incurred $92,111.76 in fees and costs. Ex. A-2. The majority of the services were rendered by Mr. Ernest Rossiello ["counsel"].

### A. EXCHANGE OF DATA REQUIRED BY LR 54.3 (N.D., Ill.)

With the exchange, counsel provided his time and billing records with copies of affidavits and other information regarding his 2005-2010 billing rates. These demonstrated that he was being paid hourly rates of between $540 and $625 in this and in other cases for the duration of this litigation (2005-2010). Defendant produced no counter-affidavits of counsel's market rates. Defendant also had the benefit of a large volume of court orders, opinions and case citations of other fee awards counsel had received over the past 15 years or so. This data was previously made available to defendant in the state court action, Robert Johnson v. GDF, Inc., No. 05 CH 7990 (Cook Co., Ill.) Counsel's current affidavit, Ex. M, pp. 3-7, lists numerous orders and settlements effectuated with the hourly rates collected.

### B. THE JOINT STATEMENTS

---

Rothchild lawfirm telephone number).

[2] Because defendant did not pay the judgment or post a *supersedeas* bond on appeal, plaintiff garnished their bank account. A Rule 69 FRCP motion for turn over order is being presented with this motion.

[3] As required, plaintiff submitted the first draft with his time and billing records. Defendant did

In the first joint statement, Ex. A-1, counsel claimed $80,864.40 in fees for 136.48 hours of counsel's time, through November 23, 2009, See also Ex. B-2, at an average hourly rate of $592.50. Ex. A-1. Defendant returned the first joint statement on or about March 4, 2010, Ex. A-1. At that time, they were of the opinion that plaintiff's fee should be $17,655.00 at $375.00 per hour for 47.08 hours of time. Ex. A-1. Paradoxically, as of that time, defendant's attorneys had expended nearly triple the number of hours (310.90 hours) and billed their client (at lower defense rates) for $81,473.45. Ex. C. Counsel considered some of defendant's objections to the hours and costs and deleted some duplicative time as well as one subpoena fee, which was for a witness who appeared in the courtroom, but was excused after having been interviewed. Counsel also deleted a $455.00 clerk's fee for the notice of appeal, as this was agreed to be paid by defendant as part of the settlement of the appeals.

After mediation in the court of appeals, and on July 8, 2010, counsel proposed, and defendant returned, a second joint statement, Ex. A-2. In it, as of May 28, 2010, the claim was for $89,821.15 in fees for 150.92 hours of time. [This produced an hourly rate of $595.16.] Defendant was then of the opinion that counsel should be paid $19,710.00 for 52.56 hours of time at $375 per hour. Ex. A-2. Defendant explained its position in a letter, B-3. [Although the letter is marked "Confidential Settlement Correspondence" there is no settlement offer made in it; hence, it is filed with the court, as it appears to be what is required under LR54.3(d)(5) (N.D. Ill.), namely an objection to the hours claimed by plaintiff.]

### III. DEFENDANT'S ARGUMENTS FOR A REDUCTION ARE MERITLESS

#### A. THE HOURS WORKED ARE NOT EXCESSIVE

Defendant, paradoxically, contends that plaintiff's request for 150.92 hours of work for services performed (as of May 28, 2010) is excessive; yet, they do not, and cannot, explain why they worked almost triple (310.9) the number of hours that plaintiff's lawyer did. Compare Ex. A-1 with Ex. C. Plaintiffs, with the burden of proof, usually are required to work more hours than a defendant. The time records show that Mr. Rossiello, a sole practitioner, performed 95.64% of the services, Ex. G, by himself. On the other hand, defendant, a corporation, had at least two lawyers [Rothschild and Dougherty] on the case. Mr. Rossiello is efficient and bills

---

not promptly return the statement with its submissions.

conservatively. He bills in six minute time frames, not quarter hours. He bills only for the principal activities and usually records the precise time of day when the service is completed. He does not bill for all telephone calls or faxes or other quick tasks like reviewing some documents which take one or two minutes. Taking a federal civil case to verdict is serious business. Judges and juries expect a plaintiff's lawyer to be ready and well-prepared. Jury instructions must be carefully prepared and reviewed. The pre-trial order itself takes much work. Witnesses must be interviewed and prepared; telephone calls must be made to coordinate witnesses' schedules with the court's. In this case, there were no delays. Counsel was prompt, punctual, and had all witnesses, jury instruction and verdict forms ready to meet the court's schedule. He examined his witnesses in a prepared and experienced fashion. There were no delays. Counsel and the court were civil. The trial was started on a Monday morning, and the verdict was returned on Wednesday afternoon, the same week. To accomplish this for under $150,000.00, including expenses, is certainly reasonable and not excessive. Counsel's experience in handling discrimination suits in the Federal District Court was manifest. He has tried most of his cases in four days or less. Davis v. Electrical Insurance Trusteees, No. 06C5319 (N.D. Ill.) (Bucklo, J.) Ex. O, was tried to verdict in two days. The fee ($136,756.96) derived there, and paid, was greater than the fee ($112,566.87) claimed here, where there was virtually no discovery and no motion for attorneys' fees filed or prepared. Pickett v. Sheridan Health Care, No. 07C1722 (N.D. Ill.) (Pallmeyer, J.) was tried in two days (Sept. 2-3, 2008) and the hours expended there were commensurate with that they were here. The fee requested here is reasonable. Counsel should not be penalized for being efficient, experienced and capable of successfully taking a case to the jury with little to no discovery.

  Redundant, unnecessary time has already been excluded from the bill. In preparing this motion, counsel has exercised the requisite "billing judgment" and has included only items for which a fee-paying client would be billed. Hensley v. Eckerhart, 461 U.S. 424, 434 (1982). Conversely, he has excluded all hours for which a fee-paying client would not be billed. Id. Counsel supports this motion with his own affidavit, Ex. M, and his most current time records, Ex. D, stating with particularity a description of the character of each service performed and the amount of time expended. An analysis of the activities is attached to the motion, Ex. G and H.

The time worked is reasonable under the circumstances and should be approved. Defendant's contention that the time spent was unnecessary and needlessly increased the cost of litigation is disingenuous. Counsel's low number of hours (as a sole practitioner) belies that contention.

This was not a case of admitted liability. It was disputed. Citing <u>Spegon v. Catholic Bishop of Chicago</u>, 175 F.3rd 544 (1999) and <u>Curtean v. Federal Mortgage</u>, 2005 WL1661991 (N.D. Ill.) defendant contends that this case should have settled within three hours. They blame plaintiff for not making a settlement demand early on. Niether <u>Spegon</u> nor <u>Curtean</u> went to trial by jury; neither case was a retaliation case with contentious factual issues. Both were pure overtime cases which settled, except for the fee issue alone being submitted to the district court. These cases have no application here. Defendant makes no explanation why they have nearly triple the amount of time. Plaintiff can only believe it was truculent litigation tactics which motivated defendant to press on so stridently for five years.

### B. THE CASE WAS CONTENTIOUSLY LITIGATED BY DEFENDANT

Defendant contended that there never was any liability. In answers to interrogatories, they attested, under oath, that Johnson "voluntarily quit" and was not fired in violation of 29 U.S.C. 215(a)(3). They said he walked off the job and was a no-show for work on July 31, 2005 when he didn't arrive for his Sunday afternoon shift. They also said that Johnson was fired for violation of their sexual harassment policy, not for filing an overtime wage claim in the state court. Indeed, they called Pascale Braidi, a co-employee, to testify that Johnson had called her a "c - -t" at work on July 29, 2005 at about 8:00 P.M. At trial, two assistant managers present that night did not remember hearing such alleged offensiveness. They stated that they did not notice Pascale Braidi being upset that night. They recalled an incident with Braidi and Johnson that night, but could not recall what it was about—breadsticks, perhaps. There was no notation of the alleged "c- -t" remark in any of defendant's personal records. Defendant wanted to fight and resist the claim. They lost and now they must pay reasonable fees, as required, as part of the judgment.

### C. THE RATES REQUESTED ARE NOT UNREASONABLE

Defendant contends that counsel's rates are unreasonable and that he should be paid $375.00 per hour for his services. This might be acceptable, were this the year 1999. See Ex. V.

Counsel's affidavit, Ex. M, ¶¶ 7(a)-(d) and 8 (a)-(r). The attached court orders and affidavits of other attorneys show that his market rate is slightly higher than other lawyers. He should be awarded his market rate. Burlington v. Dague, 112 S.Ct. 2638 (1992). As the Seventh Circuit has stated, "[L]awyers who fetch above average rates are presumptively entitled to them, rather than to some rate devised by the court." Barrow v. Falck. 977 F.2nd 1100, 1005 (7th Cir. 1992); and "an attorney's actual billing rate for comparable work is 'presumably appropriate' to use as the market rate for services." Denius v. Dunlap, 330 F.3rd 919, 930 (7th Cir. 2003)' People Who Care v. Rockford Bd. Of Educ., 90 F.3rd 1307, 1310 (7th Cir. 1996); see, also, Mathur v. Board of Trustees, 317 F.3rd 738, 743 (7th Cir. 2003)[4]. While Vedder, Price, Kaufmann & Kammolz, a management and defense firm, bills their lawyers between $450 and $540 per hour (Ex. K-1) for all employment cases, McDermott, Will and Emery (defense and management) bills their lawyers between $600 and $700 per hour. Ex. K-4. Counsel's rates are somewhere in the middle. See, Ex. M. Vicki Lafer Abrahamson (both defense and plaintiff firm), Ex. K-3, with about nine years less experience than counsel, bills her fee-paying clients $550.00 per hour. She charges a higher rate for the "actual trial." Ex. K-3. The record here shows that counsel has been compensated between $540 and $625.00 per hour over the past four years. In this motion, he requests $600.00 per hour, the average of the total hours worked divided by his historical rates[5]. See, Exs. M, O, P, Q. Counsel has submitted his fee contracts in wage disputes for the years 2004-2005 showing his market rate of $525.00 per hour then. Ex. J-1 and J-2 [$525.00 per hour in 2004-2005 for FLSA case and wage collections.]

Counsel is entitled to either "current market rates" or historical rates enhanced by pre-judgment interest. Smith v. Village of Maywood, 17 F.3d 219 (7th Cir. 1994). In this case, counsel should be entitled to $620.00 per hour, his current market rate. Instead, he requests

---

[4] Counsel's hourly billing rate in 2004 and 2005 was $525.00. His actual billing rate in 2010 is $620.00. See, Ex. J1-J3. Here, he seeks an average of his historical rates. This produces an hourly rate of $599.60, rounded out to $600.00. This is "roughly" what he would be paid. Perdue v. Kenny A., No. 08-970 (April 21, 2010), 559 U.S. ___ (2010), slip op. 8-9, "[T]he lodestar method *roughly* (emphasis is original) approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case."

[5] Of course, the court may and could award counsel's current hourly rate of $620.00 for a fee of

$600.00 per hour for the 182.66 hours expended to date.  Perdue v. Kenny A., No. 08-970 (April 21, 2010), 559 U.S. ___ (2010), slip op. 8-9, "[T]he lodestar method *roughly* (emphasis in original) approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case."  The requested fee ($111,851.00) is what counsel seeks, exclusive of the costs of $715.87.

### D. BENEFIT TO THE PUBLIC/NO ECONOMIC BENEFIT TO PLAINTIFF

Defendant next contends that plaintiff received no benefit from the judgment.  They contend that under counsel's attorney's lien and fee agreement, Ex. F, plaintiff will get nothing; *ergo*, they imply, counsel's fee should be nothing or be significantly reduced.  That is not the law.  The public at large benefits from a favorable plaintiff's judgment in a civil rights suit.  An award of punitive damages, as was obtained here, vindicates an important federal public policy enunciated by Congress.  The Supreme Court of the United States, in City of Riverside v. Rivera, 477 U.S. 561, 574-75 (1986) has expressly held:

> As an initial matter, we reject the notion that a civil rights action for damages constitutes nothing more than a private tort suit benefiting only the individual plaintiffs whose rights were violated. Unlike most private tort litigants, a civil rights plaintiff seeks to vindicate important civil and constitutional rights that cannot be valued solely in monetary terms. *See Carey v. Piphus,* 435 U. S. 247, 435 U. S. 266 (1978). And Congress has determined that "the public as a whole has an interest in the vindication of the rights conferred by the statutes enumerated in § 1988, over and above the value of a civil rights remedy to a particular plaintiff. . . ." *Hensley,* 461 U.S. at 461 U. S. 444, n. 4 (BRENNAN, J., concurring in part and dissenting in part). Regardless of the form of relief he actually obtains, a successful civil rights plaintiff often secures important social benefits that are not reflected in nominal or relatively small damages awards."

The Seventh Circuit has agreed with the Supreme Court.  See, Anderson v. AB Painting and Sandblasting, 5768 F.3rd 542, 544 (7th Cir. 2009), Dunning v.Simmons Airlines, 62 F.3rd 863, 874, n. 13 (7th Cir. 1995).   Accordingly, Johnson's judgment, which included an award of punitive damages, clearly benefitted the public and, hopefully, will serve as a deterrent to this employer and others not to discriminate against employees who bring federal or state wage claims.

---

$113,249.20; but he suggests the rounded out hourly rate of $600.00.

The incidental fact that the plaintiff himself will derive no economic benefit because of counsel's attorneys' lien and the contingent fee agreement is of no moment. The Supreme Court of the United States, in Venegas v. Mitchell, 495 U.S. 92, 98 (1990), has held that a litigant may assign all or part of his cause of action to his lawyer. In this case, Johnson assigned a contingent fee of 33.33% plus the first $8,500.00 to his attorney. Ex. F. Fortuitously, he will get nothing. Had the verdict been greater, Johnson may have derived some personal pecuniary benefit. The attorney's lien is a first charge on the judgment, like other liens; and, sometimes it happens that the plaintiff gets nothing. See, e.g., Valentino v. Rickners Rederi, 552 F.2nd 466 (2nd Cir. 1977). The Supreme Court, in Venegas, has also stated that such assigning plaintiffs are required to pay their lawyer what they agreed, even if it means diminishing their net recovery. There was clearly a non-tangible benefit to the judgment. If defendant were so seriously concerned about Johnson's welfare and economic status, they could offer to pay his contingent fee; or, the district court could shift an extra $10,166.67 ($8,500.00 + $1.666.67) in fees to defendant. In that manner, Johnson might recover the entire $5,000.00 undiminished by the attorney's lien. Counsel asks the district court to consider such a suggestion.

E. **COUNSEL'S UNRELATED ARDC ISSUE AND OTHER OBJECTIONS**

1. **The ARDC matter was unrelated to this litigation**

Defendant also objects to the requested fee on a series of *ad hominem* and other irrelevant grounds. They contend that counsel's unrelated ARDC four-month suspension between February 13, 2008 and June 13, 2008 should be considered by the court to reduce the fee. Counsel does not see how in the slightest it might be related to this case and the hours worked by Mr. Rossiello, none of which were during the suspension. Counsel had to pay outside lawyers to appear for plaintiff during his suspension. Defendant, on the other hand, during counsel's suspension, belittled and berated his inexperienced woman associate and sought to seek an advantage in this case during counsel's absence by objecting to limited discovery by her. The district court, in early 2008, having little choice, sustained defendant's objection for discovery, although the case was not called for trial until October 19, 2009. Hence no depositions of witnesses were taken in this case. The ARDC matter is plainly irrelevant. None of these charges have been included. The fact that a favorable judgment for plaintiff was obtained by counsel, with no witness or defendant's deposition, merely shows his advocacy skills and ability.

2. **Affidavits of market rates used in other cases are not irrelevant**

During the LR54.3 (N.D. Ill.) exchange, counsel provided defendant with affidavits of other lawyers and orders in another fee motion, Pickett v. Sheridan Healthcare, 2007C1722 (N.D. Ill.), Ex. K-1 to K-4. Defendant claimed they were irrelevant. The Seventh Circuit seems to think otherwise. An attorney's market rates for previous years and other court orders as to his rate should not be dismissed as "non-binding." See, People Who Care v. Rockford Board of Educ.. 90 F.3rd 1307, 1313-14 (7th Cir. 1996). *A fortiori*, defendant has no cause to complain where they have produced no counter-affidavits of market rates. Where there is no evidence to refute counsel's market rates, the requested rates should be approved. Id., citing Pressley v. Hager, 977 F.3rd 295,299 (7th Cir. 1992). The other affidavits, Ex. L, and supporting court orders, Exs. N, O, S-X, are relevant. Counsel wishes to note that he has handled over 224 FLSA cases within the past15 years, or as long as the clerk of this court has been keeping records on-line. The cases where counsel had his requested fee reduced, as cited by defendant, comprise approximately 1% of such cases. These past court orders, Exs. N, O, S-X, show a consistent increase in counsel's market rate over the past 15 years. The requested rate of $599.60 (rounded out to $600.00) is certainly "roughly" what counsel can command in the Chicago legal market, based on his long history of fee awards and settlements.

### 3. The five year delay between the discharge and the judgment is irrelevant

Defendant also contends that the requested fee should be reduced because of the five year delay between Johnson's discharge on July 31, 2005 and the present. There is no showing that the hours claimed expended were increased because of this. Hence, this argument is also irrelevant. Although a former suit, Robert S. Johnson v. GDF. Inc.,No 2005C6880 (N.D. Ill.) was filed on Decemder 6, 2005, counsel has omitted all time spent on that case. The first Johnson discharge suit was voluntarily dismissed under Rule 41 FRCP because counsel was physically disabled [complications of foot surgery on October 31, 2005], requiring his absence from his office until April 1, 2006. Ex. M, ¶ 12. Efforts were made in the state court case to settle this case with that one. Those efforts were unsuccessful. This court, with dispatch, made all efforts to bring the case to trial as soon as it could, considering its docket. Since counsel has exercised "billing judgment" and no claim for extra hours is made, the requested fee should be approved. There is no basis upon which to reduce the fee because of the mere duration of the litigation. A fee of $109, 560.00 for counsel's services is not unreasonable.

### 4. The fee awarded in the state court case is irrelevant to this motion

Defendant next contends that the fee here should be reduced because it was reduced in the state court action. See, Ex. I, copy of the state court opinion. They further contend that the same bizarre

methodology employed by the state court should be employed in this court. Such argument is disingenuous and untenable. The trial judge in Cook County randomly contrived a fee. She did not use the lodestar method. The federal courts, instead, drawing from an immense precedent of fee cases, use the traditional lodestar method. Perdue v. Kenny A, supra, (2010). In the state court case, plaintiff obtained a consent judgment for $4, 328.77 in back overtime wages. The Illinois Minimum Wage Law, 820 ILCS 105/12a [ILMWL], provides, like the FLSA, that attorney's fees should be awarded in addition to the judgment for plaintiff. Counsel sought to have his fees determined under the lodestar method. The county judge rejected that approach. Amazingly, there were no Illinois appellate court precedents for attorney's fees under 820 ILCS 105/12a. [Indeed, there are few fee-shifting statutes under state law.] Counsel there relied on a recent, and one of the few, reported state court fee-shifting cases, a Nursing Home Care Act case, Berlak v. Villa Scalabrini Home for the Aged, 284 Ill.App. 3rd 231, 241 (1996). It was an excellent and scholarly appellate discussion by Justice Joseph Gordon of fee shifting. It adopted entirely federal civil rights law and principles under the lodestar method. The county trial court found that counsel's reliance on Berlak was "misplaced" and that, because the language of the ILMWL was discretionary, rather than mandatory, she could arbitrarily award any fee under any method she devised on her own. In a most unorthodox fashion, the trial court decided that the contingent fee contract called for a 33.33% contingent fee contract; so, that, she thought, was a "reasonable fee." This was clearly against federal precedent, as well as Berlak. Even though 33.33% was a reasonable fee, she multiplied the "reasonable fee" by an arbitrary 2.5%. She then ordered the defendant, who did not so request, to reimburse the plaintiff for the 33.33% contingent fee collected by counsel. Counsel appealed to the Appellate Court of Illinois which affirmed in an unpublished order. They held that the fee was discretionary and that counsel had cited no case law authority (other than 820 ILCS 105/12a) for the lodestar method sought under the ILMWL. Ironically, there was no precedent to cite. As of this date (August 9, 2010) there remains no reported decision concerning attorney's fees under 820 ILCS 105/12a. It is little wonder that most lawyers do not litigate overtime cases in the state court. It is also noted that the ILMWL does not have an anti-retaliation statute comparable to 29 U.S.C. 215(a)(3), under which this suit was brought. Hence, only federal law protected plaintiff from the pernicious act of discrimination from which he sought relief. That is why the instant case was filed in this court. The state court decision (not binding on this court) should be disregarded as irrelevant, as it, on its face, is arbitrary and capricious and not acceptable under federal standards and case law. Counsel submits that this court alone should assess the quality of the representation and the merits of the fee motion.

### 5. There is no difference trying FLSA and Title VII retaliation cases

Next, defendant contends that a lower hourly rate should apply here because this was an FLSA case, much easier than a Title VII case. This is a fallacy. The same issues arise in both statutes and the same Seventh Circuit Pattern Civil Jury Instructions are used in both types of retaliation cases. The same legal standards apply. The same amount of work is required in preparing for trial in both types of cases. The same amount of skill and ability is needed; therefore, the same fee should be awarded. While there may be one or two sparse cases which state in *dictum* there should be a difference in the fees charged between FLSA and Title VII cases, those cases (which involved counsel) were pure overtime cases, not retaliation cases and did not go to trial. In virtually all counsel's cases that went to verdict, the district court awarded a fully compensatory fee.

### 6. There is no rule of proportionality

Defendant next contends that the fee requested is excessive because it is disproportionate to the judgment recovered. This antiquated argument has been successfully refuted *ad nauseam*. See, City of Riverside v.Rivera, 477 U.S. 561, 574-76 (1986) where the Supreme Court made clear that there is no rule of proportionality between the judgment obtained and the fee awarded. The Seventh Circuit has followed this rule innumerable times, most recently in Anderson v. AB Painting and Sandblasting,Inc.. 578 F.3rd 542, 544 (7th Cir. 2009) and Dunning v. Simmons Airlines, Inc., 62 F.3rd 863, 874 n. 13 (7th Cir. 1995). The rationale for this rule is that, "[B]ecause damage awards do not only reflect fully the public benefit advanced by civil rights litigation, Congress did not intend for fees in civil rights cases, unlike most private law cases, to depend on obtaining substantial monetary relief." Dunning v. Simmons Airlines, at n. 13, citing City of Riverside v. Rivera, 477 U.S. at 575 (1986). Hence, defendant's argument should be rejected.

### 7. The time spent on appeal is compensable

After the verdict, both parties appealed. Counsel spent 10 hours in the appellate process, resulting in a favorable mediation. This is 5.26% of the total time in the case. Ex. H. Defendant contends that no time spent on the appeals process or mediation should be reimbursed because plaintiff, Johnson, did not benefit from it. This argument is likewise a fallacy. As explained above, civil rights suits benefit the public at large, and not only the individual plaintiff. In this case, the employer was assessed with punitive damages, lost wages and liquidated damages. Plaintiff obtained a legally enforceable judgment.

Defendant appealed the merits judgment. Plaintiff cross-appealed the denial of liquidated damages. The court of appeals, on its own motion, entered a rule to show cause why the appeal should not be dismissed for lack of entry of a final judgment. [No finite monetary amount was contained in the judgment.] The merits briefing schedule was suspended while both parties briefed the order to show cause. Counsel demonstrated that the judgment was really for $5,000.00 even though the courtroom deputy neglected enter that amount in the Rule 58 FRCP judgment. Counsel was able to moot the order threatening to dismiss the appeal. The court of appeals then ordered mediation under Rule 33 FRAP and Circuit Rule 33. The parties were required under Rule 33 FRAP to participate in such prehearing conference. That conference took the better part of one full day and resulted in a settlement of all issues: dismissal of both appeals and payment of the judgment, liquidated damages, interest and costs for filing the cross-appeal. The parties also agreed to return to the district court to have the fees determined. All time claimed in the appeals process (10.04 hours) was reasonably spent and is compensable. See, Jaffee v. Redmond, 142 F.3rd 409 (7th Cir. 1998) [Adopting the "private attorney general" rationale].

### IV. THE TIME AND BILLING RECORDS

Counsel attaches an analysis of the time expended on the case by Mr. Rossiello's office (as of August 9, 2010), itemized by lawyer in the attached summary analysis, Ex.G, as follows:

| ATTORNEY | HOURS | AMOUNT | %TOTAL |
|---|---|---|---|
| Ernest T. Rossiello | 182.66 | 109,522.37 | 97.95% |
| Petrine J. Nielsen | 1.25 | 343.75 | .65% |
| Erica S. Longfield | 7.08 | 1,946.85 | 3.71% |
| Paralegal Services | 000 | 000 | 0000 |
| | 190.99 | $111,812.97 | 100.00% |

A summary analysis of the time expended on the principal activities by Mr. Rossiello's office, Ex. H, shows:

| ACTIVITY | AMOUNT | %TOTAL | TIME | %TOTAL |
|---|---|---|---|---|
| Appeal | $ 6,220.66 | 5.56% | 10.04 | 5.26% |
| Trial Time | 45,612.38 | 40.79% | 76.98 | 40.31% |
| Motions | 15,875.10 | 14.20% | 27.16 | 14.22% |
| Court/status | 8,310.43 | 7.43% | 16.76 | 8.78% |

|  |  |  |  |  |
|---|---|---|---|---|
| Motion for fees | 18,073.35 | 16.16% | 29.14 | 15.26% |
| Legal Research | 5,528.68 | 4.94% | 9.06 | 4.74% |
| Prepare pleadings | 2,004.63 | 1.79% | 3.38 | 1.77% |
| Misc., phone etc. | 10,187.74 | 9.13% | 18.47 | 9.66% |
|  | **$111,812.97** | **100%** | **190.99** | **100.00%** |

## V. REQUEST FOR EVIDENTIARY HEARING

The Seventh Circuit has also held that an evidentiary hearing should be held, upon request or otherwise, before the district court makes any adjustment to the requested fee where no opportunity to be heard about its intended reductions has been afforded. Spellan v. Board of Education, 59 F.$^{3rd}$ 642, 645 (7th Cir. 1995); Hutchison v. Amateur Electric Supply, 42 F.$^{3rd}$ 1037, 1044 (7th Cir. 1994). Plaintiff would call as witnesses her attorney and one or two of the attesting attorney's who provided affidavits as to the reasonableness of the hourly rates requested.

There is another compelling reason to set this matter for an evidentiary hearing: defendant intends to call Johnson as a witness against counsel to testify as to the absence of any personal benefit to him. Counsel suspects that there has been collusion or collaboration between Johnson and defendant and/or their lawyers. On October 26, 2009 at about 3:01 P.M. counsel's receptionist, Janet Ahlgren, listened to an angry telephone voice message, left from the telephone number of Mr. Donald Rothschild's office in Burr Ridge, from Mr. Johnson himself. See, Ex. Y and Y-1, the affidavit of Janet M. Ahlgren. Ex. Z is the email received from AT&T "Unified Messaging System" showing Mr. Rothschild's telephone number. On October 30, 2009 counsel also received an angry telephone call from Johnson complaining about the fee agreement and threatening bodily harm. An evidentiary hearing should be held in open court with Johnson as a witness. Johnson personally signed the subject fee agreement, Ex. F, and it is binding. See, pp. 7-8, infra.

## VI. COSTS INCURRED

Plaintiff has incurred $715.87 in costs, Ex. E. These expenses are permitted as necessary and reasonable costs of the action. 29 U.S.C. 216(b). Shorter v. Valley Bank & Trust Co., 678 F.Supp. 714, 726 (N.D. Ill. 1988). They are all reasonable charges in this legal community and

should be approved as such. Defendant has objected to the bill ($65.25) for Nancy LaBella, C.S.R., a court reporter. This transcript was ordered on October 20, 2009 and delivered the same day for trial proceedings on October 20, 2009. The trial was October 19-21, 2009. It was for counsel's use during the trial. It should be allowed, as it is a reasonable charge for an official court reporter's bill.

## VII. FEES FOR PURSUING FEES

Finally, it is clear that plaintiff is entitled to recover attorneys' fees for the time spent in preparing this motion for fees and in defending the entitlement to fees. Ustrak, 851 F.2d at 990 (7th Cir. 1988); Max M. v. New Trier H.S. Dist. No. 203, 859 F.2d 1297, 1302 (7th Cir. 1988); In Re: Burlington Northern Litigation, 832 F.2d 430, 432-35 (7th Cir. 1987). Counsel has included in this motion all time reasonably expended up to and including August 9, 2009. Had defendant settled the fee issue sooner, their liability would have been lesser. Quite clearly, they wish to carry on with contentious litigation. Counsel has expended 29.14 hours in connection with his fee motion. As the court can see, it is quite detailed, contains computer-generated time and billing records and is supported by an appendix containing a plethora of prior fee awards, orders and settlement documents showing that counsel has been paid between $525.00 and $62000 per hours for his services over the past five years. Such a motion cannot be expected to put together in a few hours. The time devoted to the fee issue, after the verdict comprises a mere 16.16% of the fee requested or 15.26% of all the time spent on the case. These additional expenses are also recoverable. Ustrak v. Fairman, 851 F.2d at 990 (7th Cir. 1990); Gagne v. Maher, 594 F.2d 336 (2d Cir. 1979) affd., Maher v. Gagne, 448 U.S. 122 (1980).

## VIII. CONCLUSION

WHEREFORE, plaintiff asks the court to award the following costs and legal fees:

    ERNEST T. ROSSIELLO:    182.66 hrs. @ $600.00/hr.    =    $109,560.00[6]

---

[6] The "Timeslips" analysis shows $109,522.37, Ex. G, for counsel's time. The difference takes into account the lower billing rates included in the slips over the past five years. See Ex. B-2. The rates were $540.00 in 2005 and $620.00 in 2010. The $600.00 per hour rate is the suggested average of the historical billing rates enhanced by the low interest rates in effect over the past five years. This produces a total fee "roughly" equivalent to what counsel would be paid. Perdue

(Ex. G, attached)

**ASSOCIATE LAWYER TIME:**

| | | | |
|---|---|---|---|
| ERICA S. LONGFIELD: | 7.08 hrs. @ 275.00/hr. | + | 1,947.00 |
| PETRINE J. NIELSEN: | 1.25 hrs. @ 275.00/hr. | + | 344.00 |

(Ex. G, attached) _____

| | | |
|---|---|---|
| **ATTORNEYS' FEES:** | = | **111,851.00** |
| **EXPENSES:** | + | **715.87** |
| | | ========= |
| **ATTORNEYS' FEES AND EXPENSES:** | = | **$112,566.87** |

Dated: August 10, 2010
     Chicago, IL

   s/Ernest T. Rossiello
ERNEST T. ROSSIELLO

Ernest T. Rossiello & Associates, P.C.
134 N LaSalle Street, Suite 2008
Chicago, Illinois 60606
Telephone (312) 346-8920

Attorney for Plaintiff

## CERTIFICATE OF SERVICE

     The undersigned, an attorney, states that a true and correct copy of said document was served upon defendants pursuant to ECF as to Filing Users in accordance with Fed.R.Civ.P.5(a) and (b) on this August 10, 2010 before 5:00 P.M.

   s/Ernest T. Rossiello
ERNEST T. ROSSIELLO

---

v. Kenny A., No. 08-970 (April 21, 2010), 559 U.S. ___ (2010), slip op. 8-9, "[T]he lodestar method *roughly* (emphasis is original) approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case."