**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| ROBERT S. JOHNSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 07 C 3996 |
| | ) | |
| G.D.F., INC., d/b/a DOMINO'S PIZZA, | ) | Judge Ronald Guzman |
| | ) | |
| Defendant. | ) | Mag. Judge Denlow |

---

**DEFENDANT G.D.F., INC.'S RESPONSE TO PLAINTIFF'S MOTION FOR
ATTORNEY'S FEES AND FOR EVIDENTIARY HEARING**

---

Donald S. Rothschild
Brian M. Dougherty
Goldstine, Skrodzki, Russian,
Nemec and Hoff, Ltd.
835 McClintock Drive, Second Floor
Burr Ridge, IL 60527
630-655-6000

# Table of Contents

**Description**                                                                      **Page Number**

Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Issues . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

I.   Johnson Is Not A Prevailing Party Since He Will Not Directly Benefit
     From This Lawsuit . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

II.  Johnson Achieved Only Minimal Success On The Merits . . . . . . . . . . . . . . 6

III. Rossiello's Claim Is Unreasonable . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

     A.  Rossiello's Claimed Hourly Rate Is Excessive And Unsupported . . . . . . . . 7

         1.  Rossiello Has Not Established His Market Rate Via
             Fee Contracts With Other Clients . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

         2.  Rossiello Has Not Otherwise Sufficiently Established A $600/hr
             Market Rate . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

             a.  Other Rossiello Cases Do Not Support His Claimed
                 Market Rate . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

             b.  Affidavits From Other Attorneys Do Not Support A $600
                 Rate In FLSA Cases . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

                 i.  Attorneys Schnadig, Pontikes and Abrahamson . . . . . . . . 11

                 ii. Attorneys Erf and Stahl . . . . . . . . . . . . . . . . . . . . . . . . . 13

         3.  There Is Strong Evidence Establishing A Market Rate For FLSA
             Cases That Is Substantially Less Than $600 . . . . . . . . . . . . . . . . . . . 13

             a.  Associate Erica S. Longfield . . . . . . . . . . . . . . . . . . . . . . . . 15

     B.  The Number Of Hours Expended Is Unreasonable . . . . . . . . . . . . . . . . . 16

         1.  Specific Objections . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

         2.  Attorney's Fees Related To The Appeal . . . . . . . . . . . . . . . . . . . . . 17

         3.  Attorney's Fees For Preparing And Prosecuting The Fees Motion . . . 18

     C.  Rossiello's Fees Should Be Further Subjected To A Substantial
         Downward Adjustment Given The Facts Of This Case And Rossiello's
         Well-Documented Litigation And Billing Tactics. . . . . . . . . . . . . . . . . . . 19

         1.  Rossiello Has A Published History Of Criticism Addressing His
             Fee Requests . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

         2.  Rossiello's Troubles With The ARDC Are Relevant . . . . . . . . . . . . . 24

3.    Any Delay Or Contentiousness In This Case Is Attributable To Rossiello . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

4.    Even If Fees Need Not Be Proportionate To The Judgment, They Must Be Reasonable . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

D.    Nontaxable Expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

**TABLE OF CASES**

**Case Name**                                           **Page Number**

*Avitia v. Metropolitan Club of Chicago*, 731 F.Supp. 872 (N.D. Ill. 1990) . . . . . . . . . . . . . . . 21

*Bankston v. State of Illinois*, 60 F.3d 1249 (7th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Barnett v. City of Chicago*, 122 F.Supp.2d 915 (N.D. Ill. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Connolly v. Natl. Sch. Bus Serv., Inc.*, 177 F.3d 593 (7th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . 6

*Curtean v. Federal Mortgage, Inc.*, 2005 WL 1661992(N.D. Ill. July 13, 2005) . . . . . . . . . . . . 6

*Doden v. Plainfield Fire Protection District*, 1996 WL 180073 (N.D. Ill. 1996) . . . . . . . . . . . 21

*Dormeyer v. Comerica Bank-Ill.*, 1999 WL 608771 (N.D. Ill. Aug. 6, 1999) . . . . . . . . . . . . . . . 7

*Farrar v. Hobby*, 506 U.S. 103 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Garcia v. Oasis Legal Finance Operating Co.*, 608 F.Supp.2d 975 (N.D. Ill. 2009) . . . . . . . . 14

*Garcia v. R.J.B. Properties, Inc.*, 2010 WL 2836749 (N.D. Ill. July 19, 2010) . . . . . . . . . . . . 14

*Goodale v. George S. May International Co.*, 2010 WL 2774013 (N.D. Ill. July 14, 2010) . . . . 14

*Hensley v. Eckerhart*, 461 U.S. 424 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Holyfield v. Quinn & Co.*, 1991 WL 65928 (N.D. Ill. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Jaffee v. Redmond*, 142 F.3d 409 (7th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Knazavich v. Siglers Auto Ctr., Inc.*, 2001 WL 1335772 (N.D. Ill. 2001) . . . . . . . . . . . . . . . . . 21

*Kurowski v. Krajewski*, 848 F.2d 767 (7th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*LeTourneau v. Pan American Financial Services, Inc.*, 151 F.3d 1033 (7th Cir. 1998) . . . . . . . 7

*Lizak v. Great Masonry, Inc.*, 2010 WL 3001906 (N.D. Ill. July 29, 2010) . . . . . . . . . . . . . . . 14

*Petersen v. Gibson*, 372 F.3d 862 (7th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Riddle v. National Sec. Agency, Inc.*, 2010 WL 655443 (N.D. Ill. Apr. 23, 2010) . . . . . . . . . . 14

*Shea v. Galaxie Lumber & Constr. Co. Ltd.*, 1997 WL 51655 (N.D. Ill. 1997) . . . . . . . . . . . . . 8

*Shea v. Galaxie Lumber & Constr. Co., Ltd.*, 1999 WL 138791 (N.D. Ill. March 2, 1999) . . . . 19

*Small v. Richard Wolf Medical Instruments Corp.*, 264 F.3d 702 (7th Cir. 201) . . . . . . . . . . . . 4

*Smith v. Village of Maywood*, 17 F.3d 219 (7th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Spegon v. Catholic Bishop of Chicago*, 989 F.Supp. 984 (N.D. Ill. 1998) . . . . . . . . . . . . . . . 19

*Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544 (7th Cir. 1999) . . . . . . . . . . . . . . . . . . . 6

*Stomper v. Amalgamated Transit Union, Local 241*, 26 F.3d 316 (7th Cir. 1994) . . . . . . . . . . . 6

*Texas State Teachers Ass'n v. Garland Independent School District.*, 489 U.S. 782 (1989) . . . . 4

*Uphoff v. Elegant Bank, Ltd.*, 176 F.3d 399 (7th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Ustrak v. Fairman*, 851 F.2d 983, 987-88 (7th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

## BACKGROUND

This case arises under section 215(a)(3) of the Fair Labor Standards Act of 1938 (29 U.S.C. 201 *et seq.*) ("FLSA"). Section 215(a)(3) provides, in relevant part, that it is unlawful to "discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter ..." 29 U.S.C. § 215. Johnson was employed by G.D.F. as a pizza-maker. During his employment, Johnson allegedly complained about not being paid overtime wages. In May, 2005, Johnson filed a class-action complaint in the Circuit Court of Cook County, Illinois (State Action) seeking overtime wages for himself and similarly-situated employees pursuant to the Illinois Minimum Wage Law.[1] Johnson subsequently, on December 6, 2005, filed an action in this district, docketed as Case No. 05-CV-6880, claiming that he had been discharged in retaliation for complaining about not being paid overtime wages and filing the State Action. Case No. 05-CV-6880 was voluntarily dismissed by Johnson on January 12, 2006.

In July, 2007, Johnson filed the instant action in this district again claiming that he was terminated in July, 2005 because he initiated the State Action. This action is a refiling of the case dismissed voluntarily by Johnson eighteen (18) months earlier. In this action, Johnson sought the relief available under section 216(b) of the FLSA. The complaint specifically prayed for $75,000 in damages. (Dkt. 1). During discovery, G.D.F. sought a calculation of Johnson's damages. On

---

[1] In the State Action, Johnson's request for class certification was denied on July 31, 2006, leaving only Johnson's individual claim. Settlement was made impossible by Rossiello's exorbitant demand for fees. After the case had been pending for approximately two years, Johnson's claimed damages were finally quantified and G.D.F. promptly consented to judgment in the amount of $4,328.77. Rossiello then submitted a fee petition seeking an astounding $44,062.20 in attorney's fees. The Circuit Court awarded only $5,666.54 in fees, of which $1,619.01 was obtained by Rossiello from Johnson pursuant to a contingency fee agreement. The State Action fee award amount was determined by taking the contingent fee amount and applying a 3.5 multiplier. *See* Memorandum Opinion and Order attached as **Exhibit 1**. Despite Rossiello's insistence that the trial court judge abused her discretion in not applying the "lodestar" method, the award was affirmed by the Illinois Appellate Court. *Johnson v. G.D.F., Inc., et al.*, 1-08-1984 (June 5, 2009).

1

January 4, 2008, Johnson responded by claiming $10,000. (*See* Plaintiff's Answers to Defendant's Interrogatories, no. 12, attached as **Exhibit 2**). No supporting documents were ever produced that justified the $10,000 claim. In a Final Pretrial Order submitted prior to trial, Johnson increased his damages claim to $13,500. (Dkt. 121). No supporting documents were ever produced that justified the $13,500 claim.

On October 19-21, 2009, the case was tried by the jury. In Johnson's opening statement, he claimed (much to G.D.F.'s surprise) that he was seeking only **three-weeks of back wages** (which approximated $1,000) since shortly after this employment, he secured employment at a higher rate of pay. (See opening statement transcript attached as **Exhibit 3**, p. 18).[2] On October 21, 2009, the jury returned a verdict in favor of Johnson and against G.D.F. and awarded him $1,000 in back pay and $4,000 in punitive damages. (Dkt. 123). On October 23, 2009, Johnson filed two motions that collectively sought to alter/amend the October 21, 2009 judgment to add liquidated damages under Section 216(b). (Dkt. 126, 127). On November 3, 2009, G.D.F. filed its renewed motion for judgment as a matter of law arguing that the jury's verdict was not supported by the evidence. (Dkt. 133).

On February 5, 2010, the district court entered an order: 1) denying Johnson's motion to amend the judgment to add liquidated damages and 2) denying G.D.F.'s motion for judgment as a matter of law. (Dkt. 144). Both parties timely appealed these determinations. After the appeals were filed and consolidated, the parties reached an agreement through mediation at the United States Court of Appeals for the Seventh Circuit. Specifically, both parties agreed to dismiss their appeals and G.D.F. agreed to pay Johnson the amount of the jury verdict plus post-judgment interest plus

---

[2] During discovery, G.D.F. requested Johnson's tax returns for 2004-2006. Those returns were never produced, although Rossiello attempted to include them as exhibits for trial, but suddenly dropped that effort.

$5,445.00 in exchange for a release of the judgment and dismissal of the parties' appeals. The only remaining issue is the request by Johnson's attorney, Ernest Rossiello (Rossiello), for attorney's fees amounting to $111,851.00[3] and expenses in the amount of $715.87. In total, Rossiello seeks compensation for 190.99 hours of attorney work on this case. When combined with the hours purportedly spent on the State Action (50 hours related to class-action and 92.98 hours, including paralegal time, spent on the individual claim), Rossiello claims that he and his firm have devoted **334.47** hours to an overtime wage claim that amounted to damages of $4,328.77 and a retaliation claim that amounted to $1,000 in back-pay damages. Just based on the actual dollar figures requested by Rossiello in this action and the State Action, Rossiello has asserted that $156,639.80 in fees (excluding the 50 hours spent on the class claim which would likely amount to at least $30,000 by Rossiello's math) were incurred for $5,328.77 in actual damages. The sheer lunacy of these numbers demonstrates why Rossiello's fee request must be denied, or very substantially reduced.

## ISSUES

The overriding, threshold issues in this case are: (1) whether Johnson is receiving a benefit from this case since, based on the contingent fee agreement and as conceded by Rossiello, Johnson is receiving no recovery; and (2) if Johnson is found to have benefitted, then whether Johnson achieved minimal success on the merits when comparing his pre-trial, disclosed damages to the damages requested and awarded at trial, which G.D.F. could not assess since Johnson's tax returns

---

[3] It is not entirely clear where this $111,851.00 figure comes from. In his Motion, Rossiello indicates that fees amounted to $92,111.76 through July 8, 2010 (*see* Motion, p. 2). Rossiello later states that $109,560.00 is "not [an] unreasonable" amount for fees in this case. (*see* Motion, p. 9). On pages 12 and 13 of the Motion, Rossiello provides two analyses demonstrating the specific components of the fees requested, which purportedly amount to $111,812.97. Yet, on the final page of the Motion, Rossiello claims fees in the amount of $111,851.00. (Motion, p. 15).

were not timely produced. To the extent that it is determined that Johnson achieved minimal success such that an award of attorney's fees is appropriate, the next inquiry is to evaluate the reasonableness of the requested amount and determining an appropriate award, if any.

## ARGUMENT

I.  **Johnson Is Not A Prevailing Party Since He Will Not Directly Benefit From This Lawsuit**

A prevailing plaintiff is entitled to reasonable attorney's fees under the FLSA.  29 U.S.C. § 216(b).  The issue is whether Johnson prevailed as a result of the trial.  As the U.S. Supreme Court has stated:

> [T]o qualify as a prevailing party, a civil rights plaintiff must obtain at least some relief on the merits of his claim. The plaintiff must obtain an enforceable judgment against the defendant from whom fees are sought, or comparable relief through a consent decree or settlement. Whatever relief the plaintiff secures must directly benefit him at the time of the judgment or settlement.. Otherwise the judgment or settlement cannot be said to affect the behavior of the defendant toward the plaintiff. Only under these circumstances can civil rights litigation effect the material alteration of the legal relationship of the parties and thereby transform the plaintiff into a prevailing party. In short, a plaintiff "prevails" when actual relief on the merits of his claim **materially alters the legal relationship between the parties** by modifying the defendant's behavior in a way that **directly benefits** the plaintiff.

*Farrar v. Hobby*, 506 U.S. 103, 111-112 (1992) (citations and quotations omitted) (emphasis added). "Beyond this absolute limitation [of some relief on the merits], a technical victory may be so insignificant ... as to be insufficient to support prevailing party status." *Texas State Teachers Ass'n v. Garland Independent School Dist.*, 489 U.S. 782, 792 (1989). "Where the plaintiff's success on a legal claim can be characterized as purely technical or *de minimis,* a district court would be justified in" denying attorney's fees. *Id.* The Seventh Circuit has used the "prevailing party" concept when considering fees under section 216(b) of the FLSA. *Small v. Richard Wolf Medical*

4

*Instruments Corp.*, 264 F.3d 702, 707 (7ᵗʰ Cir. 2001). There is no reason why *Farrar* and *Garland* would not apply here.

Rossiello tacitly admits that "[f]ortuitously, [Johnson] will get nothing," (Motion at 8), meaning that Johnson will not receive any money (or other relief) as a result of the jury's verdict. This is so because based on the contingent fee agreement, crafted by Rossiello, he will receive 1/3 of Johnson's recovery, or $1,666.50, plus up to the first $8,500 recovered by Johnson as damages.[4] (Ex. F-1).[5] Thus, Rossiello gets everything and Johnson gets nothing – a result which Rossiello characterizes as "incidental." While his client gets nothing, Rossiello gets $5,000 and seeks an additional six-figure award, which he defends as appropriate because of the benefit obtained for the public at large. The public at large did not hire Rossiello, and it is disingenuous for him to contend that as his purpose. It cannot be denied that Johnson is no better off as a result of Rossiello's efforts and that the only person who benefitted from this action is Rossiello.

*Farrar* requires that there be a change in the legal relationship between the plaintiff and defendant, not plaintiff's attorney and defendant. G.D.F. has in no way become indebted to Johnson. The judgment of $5,000 plus post-judgment interest does not "directly benefit" Johnson as opposed to directly benefitting Rossiello. Johnson never assigned his entire claim to Rossiello to prosecute in exchange for some payment. Johnson's favorable judgment is no more than a technical or theoretical victory because the resulting beneficiary is Rossiello. This situation is no different than Johnson being awarded $1 by the jury. Since Johnson did not prevail, there is no statutory basis to award attorney's fees or costs to Rossiello under section 216(b).

---

[4] *See* L.R. 83.51.8(k) (preventing a lawyer from obtaining a proprietary interest in litigation).

[5] Citations to the exhibits to Johnson's motion for attorney's fees will be cited as (Ex. [letter]). Defendant's exhibits attached hereto will be cited as (Def. Ex. [number]).

## II.   Johnson Achieved Only Minimal Success On The Merits

To determine the degree of success one has obtained, the court considers: 1) the difference between the judgment and the recovery sought; 2) the significance of the legal issues on which plaintiff prevailed; and 3) the public purpose of the litigation. *Connolly v. Natl. Sch. Bus Serv., Inc.,* 177 F.3d 593, 597 (7th Cir. 1999). "The standard is whether the fees are reasonable in relation to the difficulty, stakes, and outcome of the case." *Id. citing Bankston v. State of Illinois,* 60 F.3d 1249, 1256 (7th Cir. 1995).

Johnson prayed for $75,000 in his complaint (Dkt. 1), modified that to $10,000 in his discovery responses made in 2008 (Def. Ex. 1), and weeks before trial in late 2009 increased it to $13,500 (Dkt. 121). G.D.F. was without any ability to assess the accuracy of these figures since Johnson's tax returns were never produced in discovery as requested. Indeed, it turns out that Johnson's wages **increased** following his separation from G.D.F. At trial, Johnson only sought roughly $1,000, (Def. Ex. 3), which is the amount that was ultimately awarded by the jury as actual damages. Thus, Johnson recovered 10% of his lowest demand and less than 2% of the amount claimed in the complaint. Johnson achieved minimal success on the merits, to say the least. *Connolly,* 177 F.3d at 597 ($10,000 settlement was "minimal success" considering $40,000 demand). Johnson did not prevail on a significant legal issue and there was also no overriding public purpose in this FLSA litigation. *See, e.g., Stomper v. Amalgamated Transit Union, Local 241,* 27 F.3d 316, 318 (7th Cir. 1994) (warning against "the tendency to treat all attorneys' fees statutes as if they were insignificant variations of § 1988."). Rossiello argues to the contrary, (Motion at p. 7), but only cites civil rights cases in support.[6] This argument is untenable in light of *Stomper.*

---

[6] In many of the FLSA cases initiated by Rossiello, Rossiello has attempted to liken overtime wage claims to § 1988 claims and Rossiello has repeatedly been corrected on this point. *See, e.g., Small,* 264 F.3d at 707; *Spegon v. Catholic Bishop of Chicago,* 175 F.3d 544, 555 & n.6 (7th Cir. 1999); *Curtean v. Federal*

### III.     Rossiello's Claim Is Unreasonable

A prevailing plaintiff is entitled to **reasonable** attorney's fees under the FLSA.  29 U.S.C.

§ 216(b); *Small*, 264 F.3d at 707. Despite the arguably mandatory language included in the FLSA

regarding fees, the court still has broad discretion to determine the amount that should be awarded.

A prevailing party, or more appropriately his attorney, is not guaranteed to receive the full amount

requested. To determine fees under the FLSA, the district court will generally follow the "lodestar"

approach, multiplying a reasonable hourly rate by the number of hours reasonably expended on the

litigation. *Id.* at 707.

### A.     Rossiello's Claimed Hourly Rate Is Excessive And Unsupported

There is no basis to award Rossiello his requested rate.  "A reasonable hourly rate should

reflect the attorney's market rate, defined as 'the rate that lawyers of similar ability and experience

in the community normally charge their paying clients for the type of work in question.'" *Small*, 264

F.3d at 707 (*quoting Uphoff v. Elegant Bank, Ltd.*, 176 F.3d 399, 407 (7th Cir. 1999) (citations and

internal quotation marks omitted)).The fee applicant bears the burden of proving the market rate.

*Uphoff*, 176 F.3d at 407.  The attorney's actual billing rate for comparable work is considered to be

the presumptive market rate.  *Id.*  If, however, the court cannot determine the attorney's true billing

rate - such as when the attorney maintains a contingent fee or public interest practice - the applicant

can meet his or her burden by submitting affidavits from similarly experienced attorneys attesting

to the rates they charge paying clients for similar work, or by submitting evidence of fee awards that

---

*Mortgage, Inc.*, 2005 WL 1661992, at *5 (N.D. Ill. July 13, 2005); *Dormeyer v. Comerica Bank-Illinois*,
1999 WL 608771, at *5 (N.D. Ill. Aug. 6, 1999); *LeTourneau v. Pan American Financial Services, Inc.*, 151
F.3d 1033 (7th Cir. 1998).  Rossiello claims to have substantial experience with overtime wage cases under
the FLSA (at least 224 cases in the past 15 years as alleged on page 9 of the Motion) and similar state statutes
and the fact that he continues to compare such claims to § 1988 claims is absurd.

the applicant has received in similar cases. *Id.* Once the fee applicant has met his or her burden, the burden shifts to the defendants to demonstrate why a lower rate should be awarded. *Id.*

Hourly rates awarded in non-FLSA cases are not particularly relevant as evidence of market rates since the reasonable hourly rate is capped at the prevailing market rate for attorneys engaged in FLSA work.[7] *Spegon*, 175 F.3d at 555 & n. 6. "Judges in the Northern District have also noted that FLSA cases are less complex than Title VII and other employment-related civil rights litigation." *Small*, 264 F.3d at 707-08 (*citing Shea v. Galaxie Lumber & Constr. Co.*, 1997 WL 51655 at \*5-6 (N.D. Ill.1997) (Rossiello's actions in attaching fee awards from Title VII actions to determine fees in FLSA case was "disingenuous given the differences in complexity between FLSA claims and Title VII claims."), *vacated on other grounds*, 152 F.3d 729 (7th Cir.1998)); *see also, Holyfield v. Quinn & Co.,* 1991 WL 65928 at \*1 (N.D. Ill.1991) ("Issues under the FLSA are not unusually complicated or beyond the capability of an attorney of average ability.").

Rossiello seeks to receive an hourly rate of $600 for this litigation. (Motion, p. 6 and n. 4); *(but see* Ex. A). He claims that this rate is an average of his historical rates. *Id.* He is also claiming $275.00 as an hourly rate for his two associates. (*Id.*). Rossiello claims that he was paid an hourly rate between $540 and $625 in this and other cases between 2005 and 2010. (Motion, p. 2). Rossiello cites the following evidence for support:

- a fee agreement executed in 2005 where the client, in an FLSA case, agreed to pay Rossiello $525.00 per hour, (Ex. J-1); a similar agreement for a client that was executed in 2004, (Ex. J-2); and a bill to a doctor. (Ex. J-3).

- an agreement arrived at between him and an opposing party in 2008 where the party agreed to pay his attorney's fees. (Ex. O).[8] Rossiello's hourly rate ranged between $595.00 and $620.00 per hour. (Ex. O-3).

---

[7] Rossiello disputes this point, (Motion, p. 11), but, of course, fails to cite an authority for support.

[8] There is no evidence as to the type of case.

8

- Whistleblower Act cases where he billed at an hourly rate between $540.00 and $585.00, (Ex. P-4), and $585.00 to $625.00. (Ex. Q-3).

- a default judgment in an Illinois Human Rights Act case. (Ex. R).

- Title VII cases. (Ex. S).

- an FLSA case where summary judgment was granted by agreement. (Ex. X). Rossiello's hourly rate was $620.00. (*Id.*)

- an FLSA case where a consent judgment was entered and Rossiello claimed an hourly rate of $475.00. (Ex. U).

### 1. Rossiello Has Not Established His Market Rate Via Fee Contracts With Other Clients

The first issue is whether Rossiello's purported actual billing rate is presumptively appropriate to use as the market rate. Rossiello's only evidence is a 2004 and 2005 fee agreement and a bill to a doctor. (Exs. J-1, J-2 and J-3). Rossiello does not offer any other evidence, such as the actual time records reflecting the hourly rates for those matters, the actual bills submitted to the client, and how much the client paid. Rossiello has also tried using unrelated fee agreements before and has lost. *Curtean,*, 2005 WL 1661992 at *5 (district court rejected two fee contracts with other clients as evidence of Rossiello's market rate). Based on the foregoing, the 2004 and 2005 fee agreements and invoice are not probative in establishing Rossiello's market rate for FLSA or overtime wage cases.

### 2. Rossiello Has Not Otherwise Sufficiently Established A $600/hr Market Rate

The second issue is whether Rossiello's evidence has sufficiently established a market rate based on his other cases or what similarly experienced attorneys have billed. Rossiello asserts that he is entitled to his current rate or historical rates enhanced by prejudgment interest relying on *Smith v. Village of Maywood*, 17 F.3d 219 (7th Cir. 1994). (Motion, p. 6). *Smith*, however, involved a situation where the fee award was made three years after the initial judgment was entered. The court

9

opined that attorney's fees should be determined within a reasonable period of time after the party becomes entitled to an award of fees (i.e., judgment is entered). *Smith*, 17 F.3d at 221. Here, judgment was entered the day of the jury's verdict and Rossiello decided to wait to file his fees motion 10 months **after** judgment was entered. There was no delay attributable to either the district court or G.D.F. Rossiello made the exact same argument in connection with his request for fees in the State Action and the argument was rejected. (Def. Ex. 2, p. 4).

Additionally, the L.R. 54.3 joint statement claims a rate of $592.50. (Ex. A-1). One set of Rossiello's time records shows a rate between $540 and $620 from 2005 to 2009. (Ex. B-2). A later set of time records was changed to show a rate between $592.50 and $620. (Ex. D). It appears that Rossiello changed his rates after-the-fact, which is quite troubling (yet not surprising). Rossiello also changed other entries after-the-fact as well. (Ex. B-1). This is also disconcerting as it calls into question the accuracy of the time records, which is compounded by Rossiello's checkered past discussed in detail herein. Rossiello also asks that his rate be averaged. (Motion, p. 6 and n. 4). Averaging is inappropriate in the absence of sufficient proof of Rossiello's actual market rate between 2007 and 2010. Furthermore, Rossiello offers no reason why his hourly rate should be averaged. Given that the use of an average rate results in a $20,000 increase in Rossiello's fee, the motivation for Rossiello's request is patent.

### a. Other Rossiello Cases Do Not Support His Claimed Market Rate

Rossiello submits evidence concerning default judgments, (Ex. L-4, L-5, L-6 and T), what an opposing party in another matter agreed to pay Rossiello for fees, (Ex. O-3), an FLSA case where summary judgment was granted by agreement, (Ex. X), and a consent judgment (Ex. U). The *Curtean* court rejected Rossiello's attempts to use uncontested matters to prove his market rate. *Curtean*, 2005 WL 1661992, at *5 (rejecting default judgment and consent judgment as proof of

10

market rate). Similarly, what another party agreed to pay Rossiello is equally unpersuasive. (Ex. O-3). One case does not establish a market rate. Rossiello also provided evidence of his rate in two Whistleblower Act cases, (Exs. P-4 and Q-3), a Human Rights Act case, (Ex. R), and Title VII cases. (Ex. S). However, evidence of rates in non-FLSA cases are not particularly relevant. *Small*, 264 F.3d at 707.

### b. Affidavits From Other Attorneys Do Not Support A $600 Rate In FLSA cases.

#### i. Attorneys Schnadig, Pontikes and Abrahamson[9]

Rossiello also supplied the affidavits of Richard Schnadig, George Pontikes, and Vicki Abrahamson, (Ex. K-1, 2 and 3), in support of market rates for FLSA cases. Schnadig primarily represents management and he avers that the market rate for employment discrimination suits is between $450 and $550. (Ex. K-1, ¶ 3, 5). His currently hourly rate is $545. (*Id.*, ¶ 5). Schnadig opines that Rossiello's rate of $550 to $600 is reasonable and within the range of services for Title VII discrimination or FLSA litigation. (*Id.*, ¶ 6). Schnadig's affidavit does not specifically differentiate between non-FLSA and less complex, FLSA litigation, which the Seventh Circuit has noted a substantial difference. *Small*, 264 F.3d at 707-08. Schnadig is also a defense attorney in a large law firm whose hourly rate ($545) is actually less than what Rossiello is seeking here ($600). (Ex. K-1, ¶ 3, 5-6). Schnadig's affidavit does not sufficiently establish what he bills clients in FLSA cases.[10]

Pontikes' affidavit is even more suspect. He states that he is an attorney, but his practice is nowhere described. Pontikes opines that Rossiello's billing rates are reasonable (Ex. K-2, ¶ 7), but

---

[9] Abrahamson is now representing Rossiello concerning this fees motion.

[10] The circuit court in the State Action made a similar observation. (Def. Ex. 2, p. 5)

fails to offer an explanation to support his opinion, such as his own experience. An attorney's self-serving affidavit is altogether suspect. *Uphoff*, 176 F.3d at 408. Pontikes also states that there is no reason to differentiate between Title VII and FLSA cases. (Ex. K-2, ¶ 7). This is contrary to established Seventh Circuit precedent. *Small*, 264 F.3d at 707-08. Pontikes conclusorily declares that Rossiello's rate between $565.00 and $620.00 is reasonable within this community. (*Id.*, ¶ 9). Pontikes' affidavit is altogether insufficient since he never disclosed what he charges his own clients for similar work. *Spegon*, 175 F.3d at 556 (to establish market rate, affidavits from other similarly experienced attorneys attesting to the rate that they charge clients can be used). Furthermore, Pontikes does not offer any information regarding the rates charged by other attorneys "within this community."

Abrahamson practices employment law from the plaintiff's perspective. (Ex. K-3, ¶ 4). She states that Rossiello's rate between $592.50 and $620.00 is within the range of rates charged by other lawyers with comparable skill within the community. (*Id.*, ¶ 6). She also states that her rate is $550.00 per hour, but does not differentiate between Title VII and FLSA cases. (*Id.*, ¶ 8). Abrahamson's affidavit is equally unpersuasive. She states that Rossiello's rates are within the range of other attorneys, but does not specifically state the type of cases (Title VII or FLSA) where that hourly rate applies. She also fails to specify any attorneys or rates which purportedly demonstrate that Rossiello's rate is within the appropriate range. Equally unpersuasive is her statement that her rate is $550.00 for all matters. As aforesaid, the Seventh Circuit differentiates between FLSA and non-FLSA litigation. *Small*, 264 F.3d at 707-08. In sum, the three affidavits are not probative since they fail to set forth what these attorneys charge their clients in FLSA cases as opposed to general labor and employment cases. *Small*, 264 F.3d at 707-08; *Curtean*, 2005 WL 1661992, at *5. Additionally, all three affiants state that Rossiello's rate is reasonable, but the courts in this district

12

have described such statements as "not helpful." *Barnett v. City of Chicago*, 122 F.Supp.2d 915, 917 (N.D. Ill. 2001). To support his claimed rate, Rossiello needs more than just a few colleagues or contemporaries approving his rate; rather, he must provide the court with actual evidence demonstrating what rates are being charged by attorneys with similar experience for similar work. Rossiello's Motion and attached exhibits are woefully deficient.

### ii. Attorneys Erf and Stahl.

Rossiello also supplied affidavits from Stephen Erf. (Ex. K-4 and L-2). These affidavits are from other cases. Erf also states that he charges $660 to $745 for representing clients "in such cases." (Ex. K-4, ¶ 10). Erf makes a similar statement in his other affidavit where he averred his rate to be $530. (Ex. L-2, ¶ 6). However, it is unclear from his affidavit what "such cases" encompass. It appears from his affidavit that one case was a Title VII discrimination action. (Ex. K-4, ¶ 6). Erf is also a defense attorney so what he charges companies to defend Title VII cases is irrelevant. *Small*, 264 F.3d at 707-08. Stahl, who supplied an affidavit in another case, stated that his rate was $425 for Title VII and employment litigation, such as FLSA cases. (Ex. L-1, ¶ 9). Again, this statement is insufficient because it does not differentiate between FLSA and non-FLSA cases. *Small*, 264 F.3d at 707-08.

### 3. There Is Strong Evidence Establishing A Market Rate For FLSA Cases That Is Substantially Less Than $600

Rossiello has neutralized his own case by submitting evidence of a lower market rate in other FLSA cases where his rate was between $270 and $350. (Ex. M, ¶ 8(i), (j), (k), and (p)). In other wage and hour cases cited by Rossiello, he was paid a rate between $250 and $375. (Ex. M, ¶ 8(f), (g), and (q)).

13

In *Curtean*, decided in 2005, Rossiello sought a rate between $500 and $530. The magistrate judge found that $300 was reasonable. The district court affirmed in part, finding that $375 was a reasonable rate. The district court rejected Rossiello's use of other fee contracts, affidavits from attorneys created for other litigation, an affidavit from Erf and uncontested judgments in prior cases. *Curtean*, 2005 WL 1661992, at *5. The sole issue was whether Rossiello presented evidence that he was awarded a $525 rate in an FLSA case where the reasonableness of his rate was challenged. *Id.* at *6. The district court cited other cases where Rossiello was awarded a rate between $280 and $285. *Id.* at *6. The court ultimately concluded that $375 was a reasonable rate. *Id.*

Similar to *Curtean*, Rossiello has not offered any evidence that he was awarded a $600 rate in any FLSA case where his fees were challenged. Rossiello's own affidavit states that he was awarded between $270 and $350 in other FLSA cases. (Ex. M, ¶ 8(i), (j), (k), and (p)). Rossiello states that the $375/hr rate suggested by G.D.F. might be appropriate if this were 1999. (Motion, p. 5). However, recent cases within this district establish that an appropriate range is between $270 and $350. *See, e.g., Lizak v. Great Masonry, Inc.*, 2010 WL 3001906, at *4 (N.D. Ill. July 29, 2010) (awarding $300 rate to lead attorney in FLSA case); *Garcia v. R.J.B. Properties, Inc.*, 2010 WL 2836749, at *2 (N.D. Ill. July 19, 2010) (for litigation of FLSA claims, court awarded fee at an hourly rate of $325 for a lead attorney); *Goodale v. George S. May International Co.*, 2010 WL 2774013, at *4 (N.D. Ill. July 14, 2010) (for litigation of FLSA claims, court awarded fees at an hourly rate of $275 for the lead attorney); *Riddle v. National Sec. Agency, Inc.*, 2010 WL 655443, at *2 (N.D. Ill. Apr. 23, 2010) (for litigation of FLSA and IWPCA claims, court awarded fees at an hourly rate of $245 for the lead attorney); *Garcia v. Oasis Legal Finance Operating Co.*, 608 F.Supp.2d 975, 979-80 (N.D. Ill. 2009) (for litigation of FLSA claim, court awarded fees at an hourly

14

rate of $300 for the lead attorney). Thus, G.D.F.'s suggested hourly rate is higher than the rate applied in other relevant cases decided in the past 12 months.

Rossiello has simply not met his burden of proving that $600 is a reasonable rate, (*see Uphoff*, 176 F.3d at 407), and thus, G.D.F. does not need to supply any counter-affidavits. Since Rossiello did not meet his burden of proof, fee awards from prior, similar cases are relevant to the Court's determination of a reasonable hourly rate. *Spegon*, 175 F.3d at 557. Since $375 is the highest rate awarded to Rossiello, *Curtean*, 2005 WL 1661992 at *6, which does not depart dramatically from rates determined in other FLSA cases, then the reasonable hourly rate for Rossiello for this case should be no more than $375.

As to the rate for Rossiello's associates, no affidavits were supplied by them and there is no other evidence offered by Rossiello as to their experience or what similarly experienced attorneys charge. There is no basis for determining the two associate attorneys' market rate. Thus, any fees attributable to the work of the two associates must be denied.

### a. Associate Erica S. Longfield

With regard to Associate Erica S. Longfield, she was hired by Rossiello to handle his practice while he was suspended from the practice of law between February and June of 2008. Ms. Longfield had been admitted to the Illinois bar only four (4) short months before Rossiello's suspension commenced. Clearly, Ms. Longfield had no significant experience and, as such, a $275/hour rate is patently excessive. Furthermore, Ms. Longfield was not even admitted to practice before the United States District Court for the Northern District of Illinois (or any other federal court) when she appeared in court and filed pleadings before Judge Guzman in this case during the very time when Rossiello was suspended. (Ex. D, 3/5/08 and 3/17/08 entries); *see also* March 10, 2008 letter from G.D.F.'s counsel to Longfield attached as **Exhibit 4** and the search results for the Northern District

15

of Illinois Active General and Trial Bar Members attached as **Exhibit 5**. Judge Guzman was made aware of this and correctively counseled Ms. Longfield. Incredibly, Rossiello seeks $1,947 for 7.08 hours of work purportedly performed by Ms. Longfield in connection with this case.

It must be questioned, however, whether Ms. Longfield, in fact, did any actual work on this case aside from appearing before a court without a license to do so. Rossiello was the subject of a second ARDC complaint regarding allegations that he practiced law during the time that he was suspended between February and June of 2008.[11] It was established and determined that Rossiello directed the same attorney, Ms. Erica Longfield with regard to all of the work "performed" by her during this period of time. It has been recently determined that Rossiello essentially dictated or otherwise composed, himself, all pleadings and correspondence issued or filed by Ms. Longfield during this period of time, and further discipline was decided by the ARDC Hearing Board.[12] Accordingly, Rossiello should not be awarded any fees for Ms. Longfield's services.

### B.    The Number Of Hours Expended Is Unreasonable

### 1.    Specific Objections

After a reasonable rate is determined, the next step is for the party to prove the reasonableness of the hours worked. *Spegon*, 175 F.3d at 550. The court has an obligation to exclude any hours that were not "reasonably expended" on the case. *Id.* (*citing Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). "Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a

---

[11] *See* In re Ernest T. Rossiello, 08 CH 112, Complaint filed November 5, 2008 attached as **Exhibit 6**.

[12] *See* In re Ernest T. Rossiello, 08 CH 112, Report and Recommendation of the Hearing Board, attached as **Exhibit 7**.

16

lawyer in private practice ethically is obligated to exclude such hours from his fee submission." *Hensley*, 461 U.S. at 434. After a reasonable rate is determined, the next step is for the party to prove the reasonableness of the hours worked. *Spegon*, 175 F.3d at 550. The court has an obligation to exclude any hours that were not "reasonably expended" on the case. *Id.* (*citing Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). Rossiello claims to have exercised "billing judgment" and to have excluded redundant, unnecessary time. (*See* Motion, p. 4). This self-serving statement is made without any support or proof. Indeed, the amount of hours claimed by Rossiello have only escalated from 144.71 hours claimed in the parties' Joint Statement dated March 4, 2010 (Ex. A-1), to 159.25 hours claimed in the parties' Joint Statement dated July 8, 2010 (Ex. A-2), to 190.99 hours claimed in the Motion.[13]

G.D.F. complied with L.R. 54.3 by voicing its specific objections to Rossiello's fees. (Ex. B-3). Rossiello did not attach G.D.F.'s March 4, 2010 letter objecting to the fees and this letter is included in this response as **Exhibit 8**. G.D.F. asserted that only 47.08 hours, at most, are reasonable. (Ex. A-1). G.D.F. adopts and incorporates its specific objections in this response and asks that this Court sustain those objections.

### 2. Attorney's Fees Related To The Appeal

Rossiello is seeking compensable time for 10.04 hours on appeal. (Ex. H). G.D.F.'s specific objection to the fees incurred in connection with the appeal is that no benefit was achieved by Johnson. (Ex. B-3, sec. I.A.10). Rossiello rejects G.D.F.'s argument but fails to cite any authority

---

[13] The number of hours is not the only item that has escalated. Between the first and second Joint Statements, the amount of time requested for associate Erica Longfield increased from 6.98 hours to 7.08 hours. Additionally, the hourly rate requested for the associates has increased from **$250/hr.** requested in the first Joint Statement to **$275/hr.** requested in the Motion. Rossiello sought **$230/hr.** for associate time in connection with the State Action.

for support. (Motion, p. 11). Instead, Rossiello argues that cases such as this benefit the public at large. (*Id.*). Rossiello's reliance on the "private attorney general" doctrine in *Jaffee v. Redmond*, 142 F.3d 409 (7th Cir. 1998) is misplaced since that case does not deal with the factual circumstances present here – a settlement. Section 216(b) provides that "[t]he court in such action shall, in addition to any **judgment** awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b) (emphasis added). Before awarding fees, the court must first consider whether the plaintiff is actually the prevailing party. *Garcia*, 608 F.Supp.2d at 978. A prevailing party must obtain "formal judicial relief" through an enforceable judgment on the merits or a court-ordered consent decree. *Petersen v. Gibson*, 372 F.3d 862 865 (7th Cir. 2004). A voluntary settlement that lacks sufficient judicial *impramatur* does not suffice. *Id.* at 866.

Here, Rossiello is seeking fees as a result of the jury's $5,000 verdict. This would cover fees through trial and the post-judgment motions. Contrary to Rossiello's statement on page 11 of his Motion, liquidated damages were not assessed against G.D.F. The cross-appeals were resolved by a private agreement. (See attached **Exhibit 9**). The parties never even filed appellate briefs in the appeal. The settlement was never approved by the district court or formally made a part of a court order. Rossiello's fees on appeal concerned the liquidated damages issue and responding to G.D.F.'s cross-appeal. Johnson's appeal was no more successful than G.D.F.'s appeal. Accordingly, any and all fees relating to the appeal should be denied.

### 3. Attorney's Fees For Preparing And Prosecuting The Fees Motion.

Rossiello is also seeking 29.14 hours in pursuing his fees motion. (Motion at p. 14). Those hours represent approximately 15% of the total time spent on this case. (Ex. H); *see Ustrak v. Fairman*, 851 F.2d 983, 987-88 (7th Cir. 1988) (finding that for every hour litigating the merits, the

attorney spent 15 minutes preparing the fee motion). Given that Rossiello has submitted various fee motions in the past (which is gleaned from the various district courts and court of appeals opinions on the topic) and since he has been using the same arguments and affidavits time and time again, despite it being determined time and time again that his fee requests are improper and insufficient, 29.14 hours is patently unreasonable. *See Shea v. Galaxie Lumber & Construction Co., Ltd.*, 1999 WL 138791 at *4 (N.D. Ill. March 2, 1999) (criticizing Rossiello's excessive time in preparing briefs); *cf. Kurowski v. Krajewski*, 848 F.2d 767, 776 (7th Cir. 1988) (attorney submitted bill for 1.6 hours to prepare fee request). It is disingenuous to believe that Rossiello started with whole cloth when preparing the instant fee motion. In *Spegon*, Judge Marovich approved 1.6 hours for Rossiello's fee motion, *Spegon v. Catholic Bishop of Chicago*, 989 F.Supp. 984, 991 (N.D. Ill. 1998), and the Seventh Circuit affirmed in *Spegon v. Catholic Bishop of Chicago*, 175 F.3d at 554, relying principally on *Ustrak*. Thus, $600 ($375 x 1.6) is a reasonable fee for preparing the fees motion.

**C. Rossiello's Fees Should Be Further Subjected To A Substantial Downward Adjustment Given The Facts Of This Case And Rossiello's Well-Documented Litigation And Billing Tactics**

After the reasonable rate and reasonable hours are determined ("lodestar"), then the court may adjust the lodestar by considering a variety of factors, known as the *Hensley* factors, which are:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, **reputation**, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

19

*Hensley v. Eckerhart,* 461 U.S. 424, 430 & n. 3 (1983) (emphasis added); *see also Jaffee v. Redmond,* 142 F.3d 409, 413 (7th Cir. 1998). Pursuant to *Jaffee,* "[t]he most important of these factors is the 'results obtained.'" *Jaffee,* 142 F.3d at 413. As amply demonstrated herein, Johnson, the true plaintiff in this action, obtained no real success and is receiving no benefit from this litigation. Furthermore, it is well established, despite Rossiello's assertions to the contrary (*see* Motion, p. 11), that FLSA cases cannot be compared to § 1988 fee awards. The most significant factors demonstrating that the lodestar amount must be substantially reduced are the skill and reputation of Rossiello.

### 1.    Rossiello Has A Published History Of Criticism Addressing His Fee Requests

Rossiello's fees have been criticized and subjected to negative adjustments in numerous other cases. *See Connolly,* 177 F.3d at 598 (approved 50% reduction in lodestar to Rossiello's fees; Rossiello also conceded that "this case is all about fees."); *Spegon,* 989 F.Supp. at 989 (Marovich, J.) (awarding Rossiello three hours of time, stating "Rossiello's standards of reasonableness and this Court's standards of reasonableness are hardly commensurate. This Court will not condone Rossiello's litigation by terror tactics, and it certainly will not reward them. *** The Court is convinced that the extensive hours billed by Rossiello were not necessary in this case, and it also finds that they were unreasonable."). In *Dormeyer,* Judge Coar stated the following regarding a claim for fees by Rossiello:

> Yet again, Ernest T. Rossiello has requested large fees after winning on a small FLSA claim ... . This is a troubling pattern-and a pattern indeed it is, as a brief examination of recent cases in this district demonstrates. ... Rossiello's recent history raises the question of whether Rossiello is prosecuting cases because he believes that the claims are viable or because he believes that he can use the one, small viable claim as a means of reaping large attorney's fees for himself, **even at the expense of his clients**. (emphasis supplied)

20

1999 WL 608771 at *1, *aff'd* 226 F.3d 915, 917 (7ᵗʰ Cir. 2000)[14] ("Mr. Rossiello stands convicted of having attempted to defraud the district court and his opponent.)[15]

Rossiello attempts to defend his track record by asserting that he has been involved in over 224 FLSA cases, and the cases cited by G.D.F. in which Rossiello's fees were criticized or reduced account for only 1% of such cases. (*See* Motion, p. 9). Rossiello's self-serving argument in this regard is disingenuous because his fee requests were likely not scrutinized in a great many, if not the majority, of those cases. As demonstrated by Rossiello's own exhibits, many of his fee "awards" have been pursuant to settlement or default situations. In the cases where Rossiello's fees have been scrutinized, the courts have consistently admonished Rossiello for his litigation and billing tactics.

Rossiello argues that *Spegon* and *Curtean* are distinguishable cases that do not support an adjustment. (Motion, p. 5). Rossiello claims neither of those cases went to trial, neither was a contentious[16] retaliation case and both cases settled. (*Id.*). These arguments are unavailing. In *Spegon*, the defendant argued that Rossiello's hours were largely unnecessary. The only dispute was

---

[14] In *Dormeyer*, Rossiello was sanctioned $10,000 by the Seventh Circuit for bringing the appeal.

[15] *See also, Knazavich v. Siglers Auto Ctr., Inc.*, 2001 WL 1335772 (N.D. Ill. 2001) (reduced Rossiello's hourly rate to $200 based on other courts who had reduced Rossiello's hourly rate for "straight-forward, uncomplicated FLSA cases" and based on Rossiello's poor performance, noting that Rossiello was more lucky than good); *Doden v. Plainfield Fire Protection District*, 1996 WL 180073 (N.D. Ill. 1996 )(Marovich, J) ("this matter has brought out the worst tendencies of attorneys [among them, Rossiello] who practice in our courts-pettiness and incivility"); *Avitia v. Metropolitan Club of Chicago*, 731 F.Supp. 872, 880 (N.D.Ill.1990) (Norgle, J.) ("The conduct of [Rossiello] in this case has been, to say the least, disingenuous ... [Rossiello] has persistently engaged in half-truths and misrepresentation of current law when appearing before this court"); *Uphoff*, 176 F.3d 399 (affirming district court's decision in FLSA class-action case to reduce Rossiello's requested fees from $30,338.05 to $17,119 .20); *Small*, 264 F.3d at 708-709 (upholding reduction in billable rate from $445/hr to $300/hr and reduction in hours from 111 to 66); *Curtean*, 2005 WL 1661992 (reducing Rossiello's hourly rate from $525 to $375 and awarding only 3 hours of time plus paralegal time).

[16] If contentiousness were a lodestar modifier, virtually every case could receive an upward adjustment or no negative adjustment.

the amount of overtime due. The defendant argued that 2 hours was a reasonable amount of time to resolve the case. The district court accepted defendant's argument that the matter could have been resolved without filing suit. The district court reduced Rossiello's hours to three (3) stating that within three hours, someone of Rossiello's experience could have assessed the matter and negotiated a settlement. *Spegon*, 989 F.Supp. at 990. The court of appeals affirmed, stating:

> [W]hether a fee-paying client in Spegon's shoes would have expected counsel to contact the Diocese prior to filing suit is a permissible factor for the district court to consider in determining the reasonableness of the hours subsequently expended in pursuit of the litigation. In light of the limited amount of back overtime pay sought by Spegon and the hourly rates counsel asks this Court to award, it is not unreasonable to conclude that a fee-paying client in Spegon's situation would have expected his counsel to contact his employer prior to filing suit in order to assess the feasibility of a quick settlement, thereby maximizing the client's ultimate net recovery. *Spegon*, 175 F.3d at 552.

In *Curtean*, defendants argued that the requested hours were unreasonable since the suit could have been successfully settled if Rossiello notified them of plaintiff's claim. *Curtean*, 2005 WL 1661992, at *3. The district court stated:

> The FLSA does not contain a pre-notification requirement. However, in assessing the reasonableness of hours expended, the court may consider whether a paying client would reasonably expect counsel to contact the defendant prior to filing suit to assess the feasibility of a quick settlement that would maximize the client's ultimate net recovery. In light of the limited amount of overtime at issue, coupled with the $525 hourly rate Rossiello seeks, it is reasonable to presume a client would expect Rossiello to assess the likelihood of a quick settlement by contacting her employer prior to filing suit. The failure to do so strongly suggests subsequent hours spent on the litigation were unreasonable. *Curtean*, 2005 WL 1661992, at *3.

As a result, the district court reduced Rossiello hours from 9.24 to 3. *Id.* at *4.

*Connolly* establishes that the lodestar amount in this case should be further reduced by at least 50% since Rossiello unreasonably delayed this litigation by creating a "moving target" with respect to Johnson's back pay and not producing income tax returns that would have disclosed that he had no damages three weeks after his employment. Rossiello falsely represented at the final pre-

22

trial conference that Johnson's salary had dropped, and then argued the opposite to the jury by claiming that Johnson's income increased. (*Cf.* Final Pre-Trial Conference Transcript attached as **Exhibit 10** *with* Def. Ex. 3). The jury's verdict could have easily been based on passion for Johnson by telling themselves that awarding $1,000 in back wages and $4,000 in punitive damages would be a "no harm, no foul" result. But what the jury did not know, and what Rossiello took great pains in preventing the jury from knowing, was that any award in Johnson's favor would result in him being a prevailing party and allow Rossiello to petition for fees. Based on a 50% adjustment, Rossiello's fees should be reduced to no more than $8,827.50 ($17,655 / 2). (Ex. A-1).

Additionally, based on *Curtean* and *Spegon*, a further adjustment is warranted. Johnson is receiving absolutely nothing from this case. Thus, Johnson achieved zero success from prosecuting this action. This is the paramount factor is deciding to award fees. *Spegon*, 175 F.3d at 550 (*citing Hensley*, 461 U.S. at 436). Rossiello told Johnson in a telephone conversation that he will get nothing from the lawsuit. (Ex. D, 10/30/09 entry).[17] Johnson signed a contingent fee agreement similar to the one in *Connolly*. Based on the agreement's terms, verdict and settlement, Rossiello is entitled to, and will obtain, the total amount recovered in this case and Johnson will receive absolutely nothing. Rossiello makes no bones about his client's lack of recovery, stating: "[f]ortuitously, he will get nothing." (Motion, p. 8). Rossiello's tactics have come to pass once again and the words of prior judges prove prophetic as a client is left with no money in his pocket and

---

[17] Rossiello makes the while claim that **G.D.F.** and **Johnson** are in "collision" [sic] against Rossiello! (Motion at p. 1 and note 1). This is completely false and utterly preposterous. Rossiello asserts that Johnson called him from G.D.F.'s attorney's office on October 26, 2009. (Exs. Y and Z). In fact, on October 26, 2009, G.D.F.'s counsel was trying to reach Rossiello to deliver checks in satisfaction of the judgments entered in the state-court case. *See* October 26, 2009 letter attached as **Exhibit 11**. Rossiello's office was closed and G.D.F.'s counsel called Rossiello to see when the office would be open. G.D.F.'s counsel responded to Rossiello's untrue and ridiculous "collusion" assertion on December 11, 2009. See letter attached as **Exhibit 12**.

Rossiello is claiming over $112,000 in attorney's fees. This case was apparently all about Rossiello's fees, similar to *Connonlly*.

If Johnson's interests were considered, then he would have expected Rossiello to assess his claim in 2007 to see if settlement was possible. Johnson did in fact file his 2005 and 2006 tax returns which would have included his employment income. Rossiello would have certainly seen that Johnson was earning more three weeks **after** his employment ended. Rossiello could have then demanded three-weeks back pay and settled this matter expeditiously, thereby accruing some benefit to Johnson. No settlement demand was ever made though. This is the same reasoning employed in *Curtean* and *Spegon* where Rossiello's fees were severely reduced. The reasonable time to accomplish a settlement would have been 3 hours, as determined in *Spegon*. Thus, Rossiello should be awarded only $1,125 in attorney's fees ($375 x 3), which in addition to the $5,000 judgment amount will result in a net recovery for Rossiello of $6,125.

**2.     Rossiello's Troubles With The ARDC Are Relevant**

Rossiello's never-ending quest to turn an overtime case into a class action and his *modus operandi* of obfuscating and avoiding disclosure of the true value of a claim in order to benefit his own pocketbook underpins this case. Rossiello asserts that his history with the ARDC is of no relevance to the pending request for fees. Rossiello's first suspension is of significant importance. It was specifically concluded by the ARDC that Mr. Rossiello had engaged in the following unethical practices:

1.     failing to consult with his client as to whether to accept an offer of settlement;

2.     failing to abide by his client's wishes concerning settlement of a matter;

3.     failing to keep a client reasonably informed about the status of a matter or explain a matter to the extent reasonably necessary to permit the client to make an informed decision regarding representation;

4.      engaging in conduct involving **dishonesty, fraud, deceit or misrepresentation;**

5.      engaging in conduct that is **prejudicial to the administration of justice**, or which tends to defeat the administration of justice or bring the courts or the legal profession into disrepute.

(emphasis added). *See* attached **Exhibit 13**. Indeed, the Review Board agreed that Rossiello "placed his own interests before those of his client." *See* Review Board Report and Recommendation issued on August 13, 2007, attached as **Exhibit 14**. This conclusion is very similar to the one reached by the Seventh Circuit Court of Appeals in *Connolly*, 177 F.3d at 598. In approving the district court's award of a reduced fee, the Seventh Circuit concluded that:

> [t]he district court had ample evidence of these dilatory tactics. Rossiello rejected increasing settlement offers of $12,500, $20,000, and $25,000, only to accept a $10,000 offer which allowed Rossiello to litigate the size of his attorney's fee. The court believed that Rossiello refused the district court's order to conduct settlement negotiations with Connolly present because she might wish to accept an offer of settlement in her interests, but which did not meet those of Rossiello. The district court's impressions were confirmed when, in an apparent attempt to explain to the court why he refused to settle, Rossiello made an unusual concession that *"this case is all about fees."*

(emphasis added).

For Rossiello, all FLSA cases are about his fees. That Rossiello places his own interests above his client's interests is inescapable and well documented. It is almost universally true that in every overtime wage case pursued by Rossiello, a quick and amicable resolution likely could have been reached if Rossiello had disclosed the actual damages being claimed. Rossiello accuses G.D.F. of choosing to proceed with contentious litigation. The truth is that G.D.F. was forced to proceed with contentious litigation because Rossiello concealed and misrepresented the true value of the case and attempted to extort an exorbitant settlement in order to maximize his recovery. Had G.D.F. been advised that Johnson's actual damages amounted to only $1,000, G.D.F. never would have allowed

25

this case to go to trial. Rossiello's deceitful and selfish tactics have resulted in no benefit to his client, a drain on this Court's resources, and substantial attorney's fees paid by G.D.F. to its own counsel. Rossiello now wants to reap rewards for this behavior.

Rossiello's second suspension (currently recommended) is also relevant because it demonstrates, as do the numerous cases cited by G.D.F., that Rossiello has a blatant disregard for authority. Rossiello's recommended second suspension arises out of his failure to comply with the requirement of the Illinois Supreme Court's suspension order (i.e. he practiced law, apparently on a daily basis, during a time that he was suspended from the practice of law). Rossiello has been admonished time and time again regarding his litigation and billing tactics in FLSA cases but he continues to employ the same methodology to each and every overtime case. The deficiencies in Rossiello's fee petitions have been addressed numerous times and, yet, Rossiello continues to submit the same deficient fee petitions. Rossiello improperly exploits fee-shifting statutes and places his interests above those of his clients. He has not been thus far dissuaded from such practice. Thus, the only way to prevent Rossiello from obtaining a windfall from this sleazy strategy is to refuse to reward him for his actions.

### 3.    Any Delay Or Contentiousness In This Case Is Attributable To Rossiello

Rossiello engaged in the same evasive tactics employed in the State Action in this action. Rossiello delayed disclosing the amount of damages claimed in the State Action for nearly two years. Even after class certification was denied, the State Action languished as Rossiello failed to prosecute the case and failed to disclose the damages. Upon learning the actual damages, G.D.F. promptly consented to judgment in the amount of the claim. Had that amount been disclosed at the very beginning, the dispute likely would have been resolved with minimal time and effort. An expeditious resolution clearly would have been in Johnson's best interest. Similarly, had Rossiello

disclosed that the total back-pay claim amounted to $1,000 at the beginning of this litigation, or really at any point prior to the first day of trial, trial could have been avoided in this case (i.e., Rule 68 offer of judgment). Time and time again, Rossiello proves that he places his own interests about those of his clients. Rossiello claims that $150,000 in fees and expenses is a very reasonable figure for a case that proceeded to trial before a jury. The point is that a jury trial was not needed in this case. That a large expense was incurred to take this case to trial is solely attributable to improper tactics for which Rossiello should not be rewarded.

### 4.    Even If Fees Need Not Be Proportionate To The Judgment, They Must Be Reasonable

While it may be true that there is no rule of proportionality and that attorney's fees may greatly exceed the amount of the damages awarded in overtime wage cases, or retaliation cases, it does not necessarily flow that whatever fees requested are automatically reasonable. Including punitive damages, Rossiello's fees amount to 22.4 times the amount of the jury's verdict. There is nothing about this case which justifies an award of fees that are so grossly disproportionate to the value of the claim.

It is well known that the purpose of the fee-shifting language in the FLSA and state overtime wage statutes is to address the fact that many of such claims are relatively small such that many attorneys may not be interested in taking these cases. Rossiello presents himself as a champion for the general public and for the poor employees who are deprived of their full wages by evil employers. Here, Rossiello champions only himself. Johnson should be asked whether he views Rossiello as a champion. Acknowledging that his client will receive no benefit from this litigation, Rossiello defends his request for fees on the basis that he has provided a valuable service to the public at large. Specifically, he claims that "[t]he public at large benefits from a favorable plaintiff's

judgment in a civil rights suit." (Motion, p. 7). Once again, this is not a civil rights suit. The cases cited by Rossiello are inapplicable because they are not FLSA cases.[18] It is difficult to imagine that there has been any substantial public benefit realized as a result of this action sufficient to warrant an award of $112,000 in fees.

### D. Nontaxable Expenses

G.D.F. objects to the filing fee, subpoena fees, subpoena service fees and transcript fee. (Ex. E). Rossiello could have resolved this case without filing a lawsuit. *See* Sec. III.C.1, *supra*. The copy fees ($2.20 and $12.00) appear reasonable.

## CONCLUSION

WHEREFORE, Defendant, G.D.F., INC. d/b/a Domino's Pizza, by its attorneys, respectfully requests that this Court enter an order denying the Motion for Attorneys' Fees in its entirety. Alternatively, G.D.F. requests that this Court enter an Order providing the following: (1) allowing $14.20 as costs; (2) denying any award of fees for associate time; (3) finding that $375/hr is a reasonable market rate for Rossiello; (4) finding that $17,655 is a reasonable amount for fees for work prior to the fees motion; (5) finding that $600 is a reasonable fee for the fees motion; (6) finding that the $17,655 lodestar amount should be reduced by 50% to $8,827.50 in light of Rossiello's tactics; (7) finding that $8,827.50 should be further reduced to $1,125 which amounts to the three (3) hours of time during which a reasonable settlement could have been reached; and accordingly awarding attorney's fees and costs in the total amount of **$1,739.20** ($1,725 (item 5 plus item 7) and costs of $14.20).

---

[18] For instance, the *Dunning* case involved Title VII claims of sexual harassment and retaliation. As set forth above, it is well established that FLSA claims are not comparable to claims under the Civil Rights Act.

G.D.F., INC. d/b/a DOMINO'S PIZZA

By: _____/s/ Donald S. Rothschild_____
One of Its Attorneys

Donald S. Rothschild
Brian M. Dougherty
Goldstine, Skrodzki, Russian,
Nemec and Hoff, Ltd.
835 McClintock Drive, Second Floor
Burr Ridge, IL 60527
630-655-6000

## CERTIFICATE OF SERVICE

The undersigned, an attorney, states that a true and correct copy of said document was served upon all parties of record, pursuant to ECF as to Filing Users on this 30th day of September, 2010.

_____/s/ Donald S. Rothschild_____

## EXHIBITS

| Exhibit Number | Description | Page Number |
|---|---|---|
| 1 | Memorandum Opinion and Order, State Court Case No. 05 CH 7990, dated 7/14/08 | 1 |
| 2 | Plaintiff's Answers to Defendant's Interrogatories | 2 |
| 3 | Opening Statement Transcript | 2 |
| 4 | Letter from Defendant's Counsel to Ms. Erica Longfield, dated 3/10/08 | 15 |
| 5 | Northern District of Illinois Active General and Trial Bar Members Search Results for Ms. Erica Longfield | 16 |
| 6 | Complaint Filed with the Illinois Attorney Registration and Disciplinary Commission, dated 11/5/08 | 16 |
| 7 | Report and Recommendation of the Illinois Attorney Registration and Disciplinary Commission, dated 9/1/10 | 16 |
| 8 | Letter from Defendant's Counsel to Ernest Rossiello, dated 3/4/10 | 17 |
| 9 | Private Agreement Between the Parties, dated 5/13/10 | 18 |
| 10 | Final Pre-Trial Conference Transcript | 23 |
| 11 | Letter From Defendant's Counsel to Rossiello, dated 10/26/09 | 23 |
| 12 | Letter from Defendant's Counsel to Rossiello, dated 12/11/09 | 23 |
| 13 | Synopsis of Hearing Board Report and Recommendation, dated 1/30/06 | 25 |
| 14 | Synopsis of Review Board Report and Recommendation, dated 8/13/07 | 25 |