IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ROBERT S. JOHNSON,                    )
                                      )
                Plaintiff,            )
                                      )        No. 07 C 3996
        vs.                           )
                                      )        Jeffrey T. Gilbert
G.D.F., INC. d/b/a DOMINO'S PIZZA,    )        Magistrate Judge
                                      )
                Defendant.            )

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on plaintiff Robert Johnson's second Motion for

Attorneys' Fees and Costs Upon Remand from the Court of Appeals with Renewed Motion for

Evidentiary Hearing and Proposed Order for New Award of Fees and Costs [Dkt.#235]

("Renewed Motion for Attorneys' Fees").[1]  For the reasons discussed herein, the Motion is

granted in part and denied in part.

## I.  BACKGROUND

This case began in May 2005 and has a long history that the Court will not recount in this

Memorandum Opinion and Order.  A detailed discussion of the facts and procedural history can

be found in *Robert S. Johnson v. G.D.F., Inc. d/b/a, Domino's Pizza*, 668 F.3d 927 (7th Cir.

2012).  One of the few things that is not disputed in this case is that plaintiff Robert Johnson

("Johnson") obtained a favorable jury verdict against defendant G.D.F., Inc. d/b/a Domino's

Pizza ("GDF") on a retaliation claim under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §

_____

[1] In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties executed a Consent to
Exercise of Jurisdiction by a United States Magistrate Judge on December 3, 2012, in which the parties
voluntarily consented to have this Court exercise the Court's jurisdiction to conduct all proceedings,
including entry of final judgment.

215, *et seq.*, after a three-day trial in October 2009. The jury awarded Johnson $1,000 in lost wages, $4,000 in punitive damages, and zero dollars for compensatory damages. *See* [Dkt.#123].

As the prevailing party, Johnson and his counsel Ernest Rossiello ("Rossiello") seek to recover the attorneys' fees and costs of the action. In the first motion for attorneys' fees, Johnson and Rossiello sought $111,851 in attorneys' fees and $715.87 in costs. The district court dramatically slashed the requested fees and awarded only $1,500 in attorneys' fees and $364.20 in costs. Johnson and Rossiello appealed. The Seventh Circuit reversed the district court's decision, holding that GDF "must pay for the attorney hours reasonably required to see the case through trial, to appeal and for the collection of fees" and remanded this case to the district court for "[a] determination of the hours reasonably expended and the reasonable hourly rate." *Johnson*, 668 F.3d at 933.

Johnson and Rossiello filed a second fee petition and Renewed Motion for Attorneys' Fees, seeking their attorneys' fees and costs, and requesting an evidentiary hearing. As discussed more fully below, Rossiello was suspended from the practice of law in March 2012 when the Seventh Circuit mandate issued. He, therefore, brought Keith Hunt and Associates ("Hunt") into the case to assist with the second fee petition. The Renewed Motion for Attorneys' Fees also includes Hunt's request for his attorney's fees and expenses arising from his work on the second fee petition and Renewed Motion for Attorneys' Fees.

The Court held a hearing on September 25, 2013, on the Renewed Motion for Attorneys' Fees during which it provided Johnson's counsel with the opportunity to present their arguments and to respond to the Court's questions. At that hearing, Rossiello made an extended oral presentation, and the Court accepted additional exhibits in support of the Renewed Motion for

Attorneys' Fees. *See* [Dkt.#239]. (By the time of the September 25, 2013 hearing, Rossiello's suspension from practice had been lifted.) After the hearing, Johnson, Rossiello and Hunt also submitted supplemental billing records for which they are seeking compensation as part of the second fee petition and Renewed Motion for Attorneys' Fees. *See* [Dkt.##261, 262]. They now seek a total of $290,917.48 in fees and $2,197.94 in costs, more than double the amounts sought in the first fee petition. *See* Proposed Order Awarding Attorney's Fees (At Current Rates) [Dkt.#266], at 6.

Although Johnson, Rossiello and Hunt say they are seeking $290,917.48 in attorneys' fees in their Proposed Order Awarding Attorneys' Fees (At Current Rates) [Dkt.#266], the attorneys' fees requested in that Proposed Order actually total $291,694.64 according to the Court's calculation. *Id.* Further, it appears that Rossiello has calculated interest on his associates' fees but not on his time or that billed by Hunt. In addition, the total number of hours set out in the Proposed Order in each category is slightly different than as represented in the briefs filed by Johnson and his counsel. And these are just some of the inconsistencies that permeate the filings made by Johnson, Rossiello and Hunt in support of the second fee petition and Renewed Motion for Attorneys' Fees. The Court has done its best to properly represent the number of hours and calculation of attorneys' fees that Johnson and his counsel are seeking. At times, however, the Court cannot reconcile counsel's calculations, and the Court has been hindered by a host of errors in counsel's various submissions.

GDF does not dispute the calculation of the total number of hours being sought by Johnson and his counsel. GDF simply accepts the total number of hours as represented by Johnson and his counsel and argues the amounts being sought are excessive. Further, while the

Court often comes up with different numbers than Rossiello and Hunt, the differences sometimes are not material. And the Court acknowledges it might be misreading Rossiello's or Hunt's time records or categorizing time differently than they did in coming up with their numbers.

The parties completely defaulted in their obligation to iron out discrepancies in a joint statement pursuant to Local Rule 54.3(e). *See* Parties' Local Rule 54.3 Joint Statement Regarding Plaintiff's Motion For Attorneys' Fees [Dkt.#231] ("The parties have not been able to reach stipulations regarding hourly rates or the amount of time sought by plaintiff."). Therefore, for the purpose of calculating the number of hours and corresponding attorneys' fees that Johnson, Rossiello and Hunt are seeking, the Court will, for the most part, use the figures as represented by them in the second fee petition and Renewed Motion for Attorneys' Fees as the starting point for its lodestar analysis. When it is essential for a critical analysis of the attorneys' fees requested, however, the Court has delved into Rossiello's and Hunt's time records and calculated the actual hours spent on particular tasks or aspects of this litigation.

## II.  LEGAL STANDARD

As the prevailing party, Johnson is entitled to "a reasonable attorney's fee to be paid by defendant, and the costs of the action." 29 U.S.C. § 216(b). When a prevailing party is entitled to "a reasonable attorney's fee," the Seventh Circuit has instructed that "the district court must make that assessment, at least initially, based on a calculation of the 'lodestar' — the hours reasonably expended multiplied by the reasonable hourly rate — and nothing else." *Johnson*, 668 F.3d at 929 (citing *Pickett v. Sheridan Health Care*, 664 F.3d 632, 639-640 (7th Cir. 2011)). The Seventh Circuit has defined a reasonable hourly rate as one that is "derived from the market

rate for the services rendered." *Pickett*, 664 F.3d at 640 (quoting *Denius v. Dunlap*, 330 F.3d 919, 930 (7th Cir. 2003)).

The fee applicant bears the burden of "produc[ing] satisfactory evidence — in addition to the attorney's own affidavits — that the requested rates are in line with those prevailing in the community." *Pickett*, 664 F.3d at 640 (quoting *Blum v. Stenson*, 465 U.S. 886, 895 n. 11 (1984)). If the fee applicant satisfies this burden, the burden then shifts to the other party to offer evidence that sets forth "a good reason why a lower rate is essential." *Id.* (quoting *People Who Care v. Rockford Bd. of Educ.*, 90 F.3d 1307, 1313 (7th Cir. 1996)).

Recognizing the difficulty in determining the hourly rate of an attorney who uses contingent fee arrangements, the Seventh Circuit has advised district courts to rely on the "next best evidence" of an attorney's market rate, namely "evidence of rates similarly experienced attorneys in the community charge paying clients for similar work and evidence of fee awards the attorney has received in similar cases." *Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 555 (7th Cir. 1999). Of these two alternatives, the Seventh Circuit has expressed a preference for third party affidavits that attest to the billing rates of comparable attorneys. *Id.* at 556. If a fee applicant does not satisfy its burden, the district court has the authority to make its own determination of a reasonable rate. *See Uphoff v. Elegant Bath, Ltd.*, 176 F.3d 399, 409 (7th Cir. 1999).

Once the district court has established the lodestar, it then may adjust it to account for factors not subsumed by the lodestar calculation. *See Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 543-44 (2010).

## III. DISCUSSION

At the outset, the Court must highlight a portion of the Seventh Circuit's opinion in this case which addresses directly GDF's overarching and oft-repeated arguments — in response to the second fee petition and instant Renewed Motion for Attorneys' Fees as well as the first fee petition — that because the fees sought by Johnson, Rossiello and Hunt in this case are unreasonable and excessive, the Court should cut those fees dramatically without engaging in a lodestar analysis. GDF laments that it never would have spent so much time on this case had it "known this to be a $1,000 back-pay suit" and that its counsel billed so much time in the case because GDF assumed "the case was filed in good faith and that truthful disclosures were made in discovery." GDF Resp. [Dkt#239], at 9.

These arguments were flatly rejected by the Seventh Circuit. The Court of Appeals' analysis bears repeating here to put into context the exercise this Court must engage in to calculate the lodestar appropriate in this case. The Seventh Circuit concluded:

> GDF . . . was not in the dark. . . . GDF knew (based on Johnson's April 2006 deposition in the state case) that Johnson was employed within ten weeks of his termination by Domino's. In fact, GDF knew he had three jobs.
>
> * * *
>
> The record simply does not support the assertion that Johnson's small back pay claim caught GDF unawares.
>
> * * *
>
> GDF conceded nothing. This was not a dispute about the *amount* of back pay and liquidated damages Johnson was entitled to, it was about whether Johnson was fired *at all*. GDF flatly denied it. . . . GDF maintained (both) that Johnson walked off the job and that he was fired for violating a sexual harassment policy. And even after GDF lost at trial, it continued its fight with a post-verdict motion for judgment as a matter of law and an appeal.
>
> * * *
>
> GDF knew (approximately) what it was up against and proceeded to trial, without an offer of judgment or any concession of liability.

GDF tested its luck and lost. Now it must pay for the attorney
hours reasonably required to see the case through trial, to appeal,
and for the collection of fees.

*Johnson*, 668 F.3d at 932-933.

GDF argues that Rossiello misrepresented the extent of Johnson's damages until trial and

that it was "flabbergasted" when Rossiello said in his opening statement that Johnson's lost

wages were just $1,000.  GDF Resp. [Dkt.#239], at 4.  But where was GDF during discovery? It

could have and should have learned the extent of Johnson's recoverable damages long before

Rossiello stood up and delivered his opening statement to the jury.

GDF issued discovery requests and interrogatories in which it asked Johnson to "provide

an itemization of all back wages you claim are owed, including the specific periods of time you

contend that the back wages are owed and how back wages were calculated."  GDF Resp.

[Dkt.#239], at 2 (citing Ex. B).  Johnson responded "approximately $10,000, plus liquidated

damages of approximately $10,000."  GDF Resp. [Dkt.#239], Ex. B.  The response did not

indicate the period of time for which the $10,000 allegedly was owed or how that number was

calculated.  *Id.*  Also, in Request for Documents No. 5, GDF sought Johnson's federal and state

income tax returns for 2005 and 2006.  Johnson did not produce those documents.  GDF Resp.

[Dkt.#239], Ex. B.  Clearly, Johnson's answers to the interrogatories were not accurate if one is

guided by the damages Johnson sought at trial.  Johnson also failed to produce relevant

information GDF requested that would have helped GDF determine its realistic exposure at trial.

A review of the docket in this case, however, reveals that GDF did not file a motion to compel

production of the information it requested but that was not produced during the discovery

process by Johnson and Rossiello.

Johnson and Rossiello as well as GDF are responsible for the gaps in information available to GDF before trial. According to the Seventh Circuit, however, GDF bears the onus of its failure to follow-up on the facts and information it *did* have available, including Johnson's deposition testimony about the extent of his losses and his admission that he lied on his employment application which also could have capped his damages. *Johnson*, 668 F.3d at 932. As the Seventh Circuit stated, GDF "is charged with having some common sense." *Id.*

Notwithstanding the Seventh Circuit's directive, GDF again argues in its response to Johnson's second fee petition and Renewed Motion for Attorneys' Fees that Rossiello should be awarded a limited fee without calculating his lodestar. GDF Resp. [Dkt.#239], at 6-8. This argument is unavailing — and just plain wrong — in light of the Seventh Circuit's clear instruction. The Seventh Circuit was unequivocal that when a prevailing party is entitled to a reasonable attorney's fee, "the district court *must* make that assessment, at least initially, based on a calculation of the 'lodestar' — the hours reasonably expended multiplied by the reasonable hourly rate — and nothing else." *Johnson*, 668 F.3d at 929 (emphasis added). Therefore, the Court now will calculate Rossiello's (and Hunt's) lodestar in this case.

## A. Calculation of Lodestar

### 1. Number of Hours Billed

The Seventh Circuit has instructed that "GDF must pay for hours reasonably expended by Rossiello and his associates." *Johnson*, 668 F.3d at 931. Counsel have an obligation "to make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary." *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983). In addition, "the court may reduce the award where the description of the work performed is inadequate." *Thompson v. City*

*of Chicago*, 2011 WL 2837589, at *7 (N.D. Ill. Feb. 14, 2011).  GDF raises several objections to the number of hours expended in this case, which the Court considers below.

In the second fee petition and Renewed Motion for Attorneys' Fees, Johnson, Rossiello and Hunt seek payment for a total of 506.35 hours based on the Court's calculation.  The number of hours are broken down as follows: 393.22 hours for Rossiello and his associates and 113.13 for Hunt and his associates.  Stated another way, Johnson, Rossiello and Hunt seek 105.79 hours for pre-trial and trial work; 28.26 hours for post-trial motions; 11.18 hours for the first appeal; 105.79 hours for the first fee petition and motion for attorneys' fees; 97.70 hours for the second appeal (which is the appeal of the district court's ruling on the first fee petition and motion for attorneys' fees); and 97.10 hours for the second fee petition and Renewed Motion for Attorneys' Fees presently before the Court.  *See* [Dkt.#235], at 2.  In the post-hearing submissions, Johnson, Rossiello and Hunt seek an additional 44.50 hours for Rossiello and 16.03 hours for Hunt for time spent on the reply brief in support of the Renewed Motion for Attorneys' Fees as well as preparing for and attending the hearing on September 25, 2013.

In response, GDF challenges the number of hours billed during the different stages of the litigation.  For ease in addressing the objections, the Court also will examine the attorneys' hours billed in the same manner.

### a.  Pre-Trial and Trial Hours

Johnson and Rossiello seek 105.79 hours of attorney time for pre-trial and trial work.  This was a three-day trial on October 19, 20, and 21, 2009.  GDF argues that the amount of attorney time spent is unreasonable for such a small case and that the number of hours billed is excessive. GDF Resp. [Dkt.#239], at 9-10.  GDF maintains that only 50.41 hours of attorney

time are reasonable for this phase of the litigation. Yet, GDF's attorneys billed over 290 hours for the pre-trial and trial phase of the litigation generating attorneys' fees totaling approximately $85,000. *See* [Dkt.#235-13], at 1-11.

Based on a review of the records submitted, the Court finds that the time requested by Rossiello, which is less than half of the amount of time counsel for GDF billed their client, for his pre-trial and trial billable hours is reasonable and compensable time except for 16.26 hours. The Court finds that 4.15 hours billed in 2005 and 2006 that were billed in a different case are not recoverable fees in this case. The fees were billed in an earlier case brought by Johnson against GDF that was filed and then voluntarily dismissed.[2]

Also, the time entry on 1/16/08 for .98 hours by Rossiello is entered as "Begin draft of pretrial memorandum." The Court does not know what Rossiello means by this "pretrial memorandum," and there is nothing in the time records to put that entry in context. Because this entry is vague and the Court is unable to decipher what work was performed, it will not be allowed. *Lopez v. City of Chicago*, 2007 WL 4162805, at *5 (N.D. Ill. Nov. 20, 2007) ("[T]he applicant for fees must provide sufficient description of the type of work performed.").

Rossiello included in the petition 7.08 hours of attorney time for the work performed by Erica Longfield, one of his associates, from 3/5/08 through 3/28/08. The time submitted by Longfield, however, was billed during a period when Rossiello was suspended from the practice

---

[2] Rossiello submitted his billing records in support of the second fee petition and Renewed Motion for Attorneys' Fees. *See generally* [Dkt.#235-2]. Hunt's billing records also were submitted. *See generally* [Dkt.#235-12]. After the September 25, 2012 hearing, both Rossiello and Hunt submitted supplemental billing records. *See generally* [Dkt.##261, 262]. Throughout this Memorandum Opinion and Order, the Court relies upon and directly quotes from those records in its lodestar analysis.

of law.[3]  In *Pickett v. Sheridan Health Care Center*, the district court held that "it would be improper to compensate Plaintiff for the time of an associate who operated during the suspension under Mr. Rossiello's supervision."  2011 WL 1219294, at * 3 (March 29, 2011) (reversed on other grounds).  The Court agrees.  Therefore, the fee award will be reduced by 7.08 hours of associate time devoted to this case during Rossiello's suspension.

The time entry on 7/15/08 for 1.17 hours also is unreasonable in that Rossiello had to file a Motion for Leave to File Instanter his opposition to GDF's motion for summary judgment because he was unable to timely file the brief  "because of suspension from practice between February 13, 2008 and June 13, 2008." [Dkt.#40], at 1.  It is not reasonable for Rossiello to charge his client for a motion that he had to file because he was suspended from the practice of law.  It also is not reasonable to request those fees from GDF in a fee petition.

Similarly, the time entry on 9/24/09 for 2.20 hours describes three tasks performed, including preparing a motion in limine to exclude evidence related to Rossiello's attorney disciplinary proceedings, which again is not reasonably compensable time.  *See* [Dkt.#87]. Therefore, the Court will disallow .73 hours from the 9/24/09 entry, which is the pro rata amount of time allocable to the motion.

Finally, Rossiello submits several time entries that essentially are for administrative tasks that he performed.  For example, there is an entry on 7/17/07 for .75 hours to file the complaint in the district court. There also are numerous entries on 8/2/07, 8/6/07, 9/14/07, 9/20/07, 2/6/09, and 2/20/09, which total .90 hours for receiving orders from the court and entering dates into a

---

[3] It is not disputed that Rossiello was suspended from the practice of law from 2/13/08 through 6/13/08.  That is a different suspension than the more recent suspension from 10/17/11 to 7/17/12 that led Rossiello to bring Hunt into this case.

calendar.  In a 9/26/08 entry for .30 hours, Rossiello describes preparing a memorandum for a paralegal to obtain certified copies of documents. There is an entry on 10/2/09 for .10 hours for a call to the district court to confirm audio-visual equipment.  In the 10/21/09 entry for .10 hours, Rossiello states that he performed a file review, organized papers and returned them to file. This description is vague, and it is unclear what actual legal work was performed.  In summary, all of these entries describe administrative tasks that should not be billed at Rossiello's higher attorney billing rate.  Therefore, Rossiello's time will be reduced by an additional 2.15 hours.

In total, the Court will reduce the pre-trial and trial hours by 16.26 hours.  Therefore, the total hours awarded for attorney time during the pre-trial and trial period are 89.53 hours.


### b. Post-Trial Hours

Johnson and Rossiello seek 28.26 hours of attorney time for post-trial work.  After the jury verdict, Johnson filed a motion for liquidated damages.  *See* [Dkt.#127].  The district court denied that motion. *See* [Dkt.#144].  Because the district court denied that motion, GDF argues that it is not reasonable to award Rossiello the hours he billed preparing the motion.  GDF Resp. [Dkt.#239], at 10.  The Court agrees.  The district court concluded that "an award of liquidated damages in addition to the jury's compensatory and punitive damages award is not necessary to effectuate the [FLSA's] purpose." [Dkt.#144].  The jury verdict and judgment does not include an award of liquidated damages. [Dkt.##123, 125].  Johnson and Rossiello appealed the district court's decision, and the parties' settled that appeal with GDF paying Johnson the full amount of the liquidated damages he was seeking.  But that does not change the fact that Johnson was

unsuccessful on that issue before the district court. Therefore, the Court will not award any attorney time for work on the motion for liquidated damages.[4]

Rossiello, however, was successful in opposing GDF's motion for judgment as a matter of law. *See* [Dkt.#144]. Rossiello asserts that he spent 16.02 hours responding to the motion for judgment as a matter of law. GDF argues that 16.02 hours is excessive and instead contends that only eight hours are reasonable. GDF Resp. [Dkt#239], at 10. The Court disagrees. Although GDF argues that 16.02 hours is excessive, it does not offer any reason why that amount of time is excessive. The Court is not convinced that 16.02 hours spent drafting a memorandum of law in opposition to a motion for judgment as a matter of law is excessive without more.

Therefore, the Court allows 16.02 hours of attorney time for the post-trial phase of this case.[5]

### c. First Appeal Hours

Johnson and Rossiello seek 11.18 hours of attorney time for the work performed on the appeal of the district court's denial of Johnson's motion for liquidated damages and GDF's cross-appeal of the district court's denial of its motion for judgment as a matter of law. Both appeals were resolved by settlement through the Seventh Circuit's mediation program. GDF argues that attorneys' fees should not be awarded for the appeal and cross-appeal because the

---

[4] As discussed below, the Court will award Rossiello the time spent on the appeal of the District Judge's ruling on liquidated damages.

[5] Rossiello says he spent 28.26 hours on post-trial matters. The Court calculates that number as 23.58 hours from Rossiello's timesheets. Again, however, as discussed above, because the Court cannot be sure it is including all the time Rossiello claims as post-trial work, and because GDF not only failed to object to Rossiello's number but also failed to comply with its obligation to provide the Court with more guidance and information under Local Rule 54.3(e), the Court accepts Rossiello's number as a starting point. With that starting point, the Court has disallowed 12.24 hours of post-trial time leaving 16.02 hours as compensable time for post-trial work.

settlement was not approved by the district court or formally made part of a court order. GDF Resp. [Dkt.#239], at 11. The Court disagrees.

In this case, Johnson completely prevailed at trial. He obtained all of his lost wages as well as punitive damages. The issue raised by Johnson on appeal was the amount of any additional damages to which he was entitled under 29 U.S.C. § 216(b) as the district court had refused to award the liquidated damages he sought in his post-trial motion. As part of the settlement of Johnson's appeal and GDF's cross-appeal, GDF agreed to pay Johnson everything he was awarded at trial plus all of the liquidated damages he sought on appeal, and the parties agreed to dismiss their appeals. *See* [Dkt.#239-10], Ex. H.

By settling the appeals, GDF paid Johnson the judgment awarded by the jury as well as the liquidated damages he was seeking on appeal. The Court finds that the work performed by Rossiello on Johnson's appeal and settling the cross-appeal filed by GDF was time reasonably required to secure for Johnson the back pay and punitive damages awarded by the jury as well as additional compensation in the form of liquidated damages. As the Seventh Circuit instructed, GDF "must pay for the attorney hours reasonably required to see the case through trial, to appeal and for the collection of fees." *Johnson*, 668 F.3d at 933.

The Court finds that Rossiello reasonably expended 11.18 hours on this first appeal to secure the most money he could obtain for his client. Through settlement of the appeal, Rossiello obtained everything he was seeking by way of liquidated damages for Johnson, which was double the amount of money the jury awarded him. As a result, Johnson recovered $10,000 from GDF in a case that GDF fought tooth and nail at every turn. *See* [Dkt.#265].

In their Agreed Motion to Dismiss Appeals, the parties requested that the Court of Appeals dismiss the appeals "by agreement on grounds that a settlement of the merits of both has been reached at mediation and the parties have returned to the district court by agreement to have the issue of costs and attorney's fees under 29 U.S.C. 216(b) decided." Johnson's Supplemental Exhibits [Dkt.#260-7], Ex.23. The Court of Appeals then issued an order dismissing the appeal by agreement of the parties. *See* Johnson's Supplemental Exhibits [Dkt.#260], Ex. 25. GDF's argument that Johnson is not entitled to the attorneys' fees billed by Rossiello for this appeal because no "judgment" was entered after the appeals were dismissed elevates form over substance. If GDF wanted to make sure that Johnson would not ask for attorney's fees for the appeal after GDF capitulated, it could have asked that the dismissal order state that each party would bear its own fees and costs incurred on the appeal. GDF did not do that. Instead, the parties specifically stated that they intended to return to the district court to resolve the issue of attorneys' fees and costs.[6]

This case thus is distinguishable from *Petersen v. Gibson*, 372 F.2d 862 (7th Cir. 2004), the only case GDF cites in opposition to Johnson's and Rossiello's request for the fees incurred on the first appeal. In *Petersen*, the plaintiff obtained a nominal damage judgment at trial but then moved to vacate that judgment. Once that motion was granted, the plaintiff settled with the defendant. Under those circumstances, the Court of Appeals found that the plaintiff was not

---

[6] GDF says it agreed to return to the district court to resolve the issue of attorneys' fees for the trial, not the fees spent on the appeal. But the parties' Agreed Motion to Dismiss Appeals does not parse the issue of attorneys' fees that finely. A reasonable interpretation of the parties' Agreed Motion to Dismiss and the Court of Appeals' dismissal order is that Johnson would seek all of his attorneys' fees incurred through appeal. GDF did not agree to pay the fees incurred on the appeal but neither did it foreclose Johnson from seeking those fees in the district court. *See* Supplement to Renewed Motion for Attorneys' Fees and Costs, [Dkt.#260-7], Ex.23.

really a prevailing party for purposes of an attorney's fee award under 42 U.S.C. § 1988 because, among other reasons, even the nominal judgment she obtained at trial was vacated. That case is much different than this case. The judgment Johnson obtained at trial was not disturbed by settlement of either appeal. Johnson obtained by settlement of his appeal and GDF's cross-appeal all of the money to which he could have been entitled under his trial judgment, and more.

Therefore, the Court allows 11.18 hours of attorney time for the first appeal.

### d. First Fee Petition Hours

Johnson and Rossiello seek 105.79 hours of attorney time for preparation of the first fee petition and motion for attorneys' fees and costs. Included in that total is 37.21 hours Rossiello spent objecting to the Magistrate Judge's report and recommendation to the District Judge on the first fee petition. GDF objects to the amount of time expended by Rossiello as excessive. GDF Resp. [Dkt.#239], at 11-12. GDF argues that 1.60 hours is a reasonable amount of time for the preparation of the first fee petition. *Id.* at 12. The Court agrees that Rossiello's request for 105.79 hours is excessive. The Court, however, disagrees that 1.60 hours is reasonable.

While time expended in preparation of a fee petition is compensable, the Seventh Circuit has observed that lawyers often "litigate fee issues with greater energy and enthusiasm than they litigate any other type of issue." *Ustrak v. Fairman*, 851 F.2d 983, 987-88 (7th Cir.1988). This case arguably is illustrative of that observation. Accordingly, one factor considered in determining the reasonableness of time spent preparing a fee petition is "the comparison between the hours spent on the merits and the hours spent on the fee petitions." *Spegon*, 175 F.3d at 554. When the time expended preparing a fee petition is disproportionate to the time spent on the

merits of the case, courts have reduced the amount of time recoverable for the preparation of the fee petition. *Id.*

In *Ustrak*, for example, the prevailing party's attorney spent 15 minutes preparing the fee petition for every hour spent litigating the merits. 851 F.2d at 988. Noting that this was "the tail wagging the dog, with a vengeance[,]" the Seventh Circuit reduced the requested time by two-thirds, and observed that the resulting "allowance is still a generous one." *Id.*; *see also Uphoff*, 176 F.3d at 411 (affirming the district court's reduction of attorney's time spent preparing the attorneys' fee motion from 9.90 hours to 1.60 hours in a case in which the attorney spent just under 100 hours litigating the merits of the case).

According to Rossiello, he spent as much time on the first fee petition as he did litigating the merits of the case.[7] Rossiello bills himself as an experienced practitioner in FLSA litigation. In looking at Rossiello's time sheets, it appears that he spent 68.58 hours drafting the first fee petition and briefing the motion for attorneys' fees before the Magistrate Judge. It should not take an experienced practitioner that much time to prepare a fee petition for a three-day trial.

In *Ustrak*, the Seventh Circuit considered the ratio of 15 minutes worked on a fee petition for every hour worked on the merits to be "excessive." 851 F.2d at 987-88 (finding that for every hour litigating the merits of the case, the attorney spent 15 minutes preparing the fee petition).

---

[7] For the reasons discussed above, the Court takes at face value Johnson's and Rossiello's representation that Rossiello spent 105.79 total hours on the first fee petition and the objections to the Magistrate Judge's report and recommendation even though that is the *exact* amount of time Rossiello says he spent on pre-trial and trial matters. The Court's own calculation is that Rossiello spent 99.22 hours on the first fee petition, including objections to the Magistrate Judge's report and recommendation. But, as noted earlier, the Court cannot be sure it is including all of the time entries Rossiello is including in his total number. And, again, GDF does not object to Rossiello's number on a line by line basis other than to say the total is excessive. In any event, the six and one-half hour discrepancy, if real, is *de minimus*. No matter which number is correct, it was too much time to spend on the first fee petition in this case.

Accordingly, the total time requested by Rossiello clearly is patently unreasonable. Calculating the ratio of hours spent on the first fee petition to 15 minutes for each hour spent litigating the merits would reduce the hours to 29.18 hours, and that is an amount of time the Seventh Circuit has deemed excessive — "the tail wagging the dog, with a vengeance." *Ustrak*, 851 F. 2d at 988.[8]

In one of Rossiello's other cases, the Seventh Circuit determined that 1.60 hours spent on the preparation of his fee petition was reasonable. *See Uphoff*, 176 F.3d at 411. In a more recent case in which Rossiello again was counsel, the district court concluded that the plaintiff's request of more than 30 hours of attorney time on a fee petition was excessive in light of the fact, among other things, that Rossiello sought a total of 225 hours in his motion for attorneys' fees for litigating the case on the merits. *Pickett*, 2011 WL 1219294, at * 3 (N.D. Ill. 2011) *vacated and remanded on other grounds* 664 F.3d 632 (7th Cir. 2011). The district court recognized that "the preparation of a fee petition can be tedious and time-consuming," but nevertheless concluded that 30 hours spent on the preparation of a fee petition was excessive. *Pickett*, 2011 WL 1219294, at * 3. Although Rossiello appealed the district court's decision in *Pickett* for other reasons, he did not object to the district court's decision to reduce the total hours for the fee petition to 23.75 hours, or roughly 10% of the number of hours spent on the trial. 664 F.3d at 638.

---

[8] Using the attorney hours awarded by the Court for the pre-trial, trial, post-trial motions, and appeal and settlement phases of the litigation, the Court arrives at a total of 116.73 hours of attorney time (89.53 hours for pre-trial and trial matters, 16.02 hours for post-trial motions, and 11.18 hours for the first appeal). Allowing 15 minutes for each hour spent litigating the merits through the first appeal, therefore, would amount to 29.18 hours.

Determining the reasonable amount of time to prepare a fee petition is inherently an inexact science. Based on previous decisions in both the district court and Seventh Circuit, however, the Court finds that 20 hours of attorney time to prepare a fee petition in a case like this involving 116.73 hours of compensable attorney time for pre-trial, trial and post-trial matters is reasonable. That is approximately 17% of the time spent on the merits of the case and is only 3.75 hours fewer than the time awarded in *Pickett*, a case in which the number of hours spent litigating the case pre-fee petition was one-third more than in this case. Further, Rossiello should have spent less time preparing the fee petition in this case since he had researched and drafted his fee petition in *Pickett* just one month before. *See also Pasternak v. Radek,* 2008 WL 2788551, at *10-11 (N.D. Ill. April 3, 2008) (holding, in a case in which plaintiff's counsel spent 199 hours litigating the merits, that 46 hours – 25% of the time spent on the merits – to prepare a fee petition was unreasonable, and awarding half that or 23 hours for the fee petition).

At oral argument, Rossiello argued that comparing the amount of time he spent preparing his fee petition in *Pickett* with the time he spent doing the same thing in this case is not appropriate since *Pickett* involved Title VII claims for discrimination and retaliation while this case involves a FLSA claim. But a fee petition is a fee petition. The different substantive law on the merits and even subtle differences in a prevailing plaintiff's entitlement to fees under the different statutes do not drive major differences in the time required to prepare a fee petition. In both kinds of cases, preparation of a fee petition after trial is a relatively straightforward undertaking. Therefore, the Court awards 20 hours of attorney time for the preparation of the first fee petition.

This leaves the 37.21 hours that Rossiello spent objecting to the Magistrate Judge's report and recommendation. It is difficult at times to assess Rossiello's time entries on a line by line basis when they state broadly "research cases," "begin draft" and "work on revisions." While such time entries may capture some compensable time, there are multiple entries with the same or similar descriptions that provide no information about the actual work performed or why it took Rossiello the number of hours it took him to do that work. GDF, again and unfortunately, provides the Court with no assistance in making this assessment other than to argue that Rossiello spent too much time doing everything he did. Notwithstanding the lack of help, it still is the Court's responsibility to review to the best of its ability Rossiello's time for reasonableness as the Seventh Circuit has instructed.

Rossiello's first time entry on 11/22/10 after the Magistrate Judge issued his report and recommendation is for .93 hours for "Legal research of In Re Continental Securities; check record in USDC online." It is unclear how any of the reported opinions under the caption *In re: Continental Illinois Securities Litigation* — a securities class action litigated in the 1980's and 1990's in the Northern District of Illinois and in the Seventh Circuit, involving multiple sets of lawyers for the plaintiff class, a related shareholder derivative case, and issues relating to calculation of fees on a lodestar versus common fund basis — is even remotely relevant to this single plaintiff FLSA case. Therefore, the Court will not allow the .93 hours of time requested for this "research."[9]

_____

[9] Out of curiosity, the Court searched the two briefs Rossiello filed in the district court on his objections to the Magistrate Judge's report and recommendation and did not find a citation to any reported *In re: Continental Illinois Securities Litigation* case in those briefs. Rossiello does cite *In re: Continental Illinois Securities Litigation*, 962 F.2d 566, 571 (7th Cir. 1992), in his reply in support of his Renewed Motion for Attorneys' Fees for the unremarkable proposition that a court can award fees at current or historical rates enhanced by prejudgment interest for a delay in payment. Reply [Dkt.#241], at

The time entry on 12/2/10 for 3.80 hours is composed of three separate tasks, and one task is described as "read NY cases." It is unclear what New York cases Rossiello was reading, or what relevance they have to this case. Therefore, the Court will reduce the 12/2/10 entry by 1.27 hours, one-third of the composite time entry.

In the time entry on 12/13/10 for .38 hours, one of the descriptions states "receive and review ARDC complaint filed by Rothschild and forward to my attorney." Again, it is not clear to the Court how such work is compensable as part of preparing an objection to the Magistrate Judge's report and recommendation concerning Rossiello's fees for representing Johnson in this case. The second description of work for the 12/13/10 entry is "organized researched cases and replace in file." This entry describes an administrative task that should not be billed at an attorney rate and will not be allowed.

For each of three time entries on 1/13/11 for 1.86 hours, 1/14/11 for 1.97 hours, and 1/17/11 for 2.22 hours, Rossiello states that he "began first draft of reply" or "began draft of reply." If Rossiello really did sit down three times to begin to draft his reply brief, then all of that time spent "beginning" to write was not reasonably expended. In other words, the Court questions what work actually was performed, productively, during these three sittings. Therefore, the Court will allow the first entry for beginning to draft the reply brief and disallow the subsequent entries, reducing the request by 4.19 hours.

The time entries on 3/15/11 for .22 hours and on 3/28/11 for .10 hours describe telephone calls Rossiello had with Johnson that do not relate to the filing of Rossiello's fee petition or

13.

objecting to the Magistrate Judge's report and recommendation, and therefore, the Court will not allow the time (.32 hours) for these entries.

Finally there are seven entries — 11/23/10 for .91 hours, 11/30/10 for 1.07 hours, 12/2/10 for 1.28 hours, .94 hours, and 1.26 hours respectively, 12/3/11 for .70 hours, and 1/13/11 for .93 hours — in which Rossiello bills a total of 7.10 hours for legal research.[10] This is work for which Rossiello should have used a more junior attorney. It is unreasonable for Rossiello to bill at his higher billing rate for what appears to be primary legal research in an area in which he professes to be an experienced and knowledgeable practitioner. Therefore, the Court will reduce his legal research hours by half and award 3.55 hours.

For all of the reasons discussed herein, the Court reduces Rossiello's requested time for objecting to the Magistrate Judge's report and recommendation by 10.64 hours and awards 26.57 hours for that project. While this is somewhat more time than the Court allowed for the first fee petition, it reasonably can take longer to appeal an adverse decision than it initially took to brief the matter. An appeal often requires a fresh look at the issue, and not only a solid response to an adversary's argument but also a clear explanation why the first judge got it wrong. Accordingly, the Court awards 46.57 hours in total for the time Rossiello billed on the first fee petition, including 26.57 hours of time for the objections to the Magistrate Judge's report and recommendation.

---

[10] Most of these entries include multiple tasks. To allocate the amount of time billed for each task, the Court will utilize the same method described below in III.A.1(f)(ii) whereby the Court has gone through each entry and added up the number of tasks described in the entry, divided the number of tasks by the number of hours billed and then allocated the pro rata portion for each task.

### e. Hours for Appeal of the District Court's Decision on the First Fee Petition

Johnson and Rossiello seek 97.70 hours of attorney time for the appeal of the district court's ruling on the first fee petition. GDF objects to the time as excessive and argues that the only issue on appeal was whether the lodestar was properly calculated. GDF Resp. [Dkt.#239], at 13. GDF argues that 19.76 hours is reasonable for the appeal of the first fee petition.[11]

The Court agrees that the time sought by Rossiello is excessive. Rossiello did raise several extraneous arguments that the Seventh Circuit never addressed — *i.e.*, Rossiello acting as a private attorney general, the mechanics of contingent fee agreements, and the public benefit of FLSA litigation — but that is not what the Court finds problematic. Based on the Court's calculations, Rossiello spent 69.09 hours on legal research, drafting and filing the appellate brief. This is time not reasonably expended on the appeal. As the saying goes, this was not Rossiello's first rodeo. Rossiello has substantial experience drafting fee petitions and appealing district court decisions concerning his fees, as he so often asserts in his submissions to this Court. Further, Rossiello has a lot of experience appealing trial court decisions that cut his requests for attorneys' fees as excessive. *See e.g.*, *Pickett*, 664 F.3d at 638-39; *Small v. Wolf Medical Instruments Corp*, 264 F.3d 702 (7th Cir. 2001); *Dormeyer v. Comerica Bank-Illinois*, 1999 WL 608771, at *1 (N.D. Ill. Aug. 6, 1999) ("Yet again, Earnest T. Rossiello has requested large fees after winning on a small FLSA claim. . . ."), *aff'd*, 223 F.3d 579 (7th Cir. 2000) (holding that the district court order awarding $6,216 in costs and attorney fees under FLSA, rather than the almost $350,000 requested, was appropriate); *Shea*, 1999 WL 138791, at *3 (stating that "this

---

[11] GDF's rationale is that the Seventh Circuit allowed 16 hours for a fee appeal in *Ustrak*, 851 F.2d at 987, and it then adds 3.76 hours for Rossiello's preparation for oral argument for the appeal in this case. GDF Resp. [Dkt.#239], at 13.

court is acutely aware that this case is not the first time a federal district court has suspected a possible manipulation or abuse of billing practices with regard to Shea's counsel [Rossiello] in a FLSA case"); *Uphoff*, 1998 WL 42312, at *3 (stating that "[t]his court having read many of Rossiello's fee motions is all too familiar with their format and content").

In addition, as discussed above, Rossiello spent 37.21 hours, which the Court reduced to 26.57 hours, objecting to the Magistrate Judge's report and recommendation. His work on those objections was, in essence, a first draft of his appellate brief. In other words, Rossiello already had researched and drafted a number of the arguments asserted on appeal in his objections to the Magistrate Judge's report and recommendation. In light of Rossiello's experience and the limited issues involved in the appeal, he spent way too much time researching and drafting the appellate brief. It was unnecessary to spend the equivalent of almost two weeks briefing the relatively straight-forward issues raised on appeal. In addition, Rossiello's time entries for this period include tasks such as "[s]tudy *Jaffee v. Redmond*" (a Seventh Circuit case that Rossiello quoted from memory during his oral argument on the renewed motion for fees on September 25, 2013), "read cases from the 9th and 4th Circuits on attorney's fees and contingent fee agreements, "[r]ead *Learned Hand* case," and "prepare table of contents and appendices." This is time that either is not compensable at all or not fully compensable in the context of this case at Rossiello's hourly rate. *See e.g., Pasternak*, 2008 WL 278851, at *9 (holding that a court can consider lack of billing judgment when determining compensable time in the context of an attorneys' fees petition).

Again, GDF gives the Court no help in analyzing the time Rossiello billed on the fee petition appeal other than to suggest that 19.76 hours in total be awarded to Rossiello for this

phase of the case based on the award in *Ustrak*. Without much help from GDF but with the conviction that 69.09 hours for the opening brief in the fee appeal is too high, the Court cuts Rossiello's requested time by one-half and awards 34.55 hours to research and draft Johnson's appellate brief.

The time records show that Rossiello spent 23.98 hours on the appellant's reply brief. Again, that is excessive, and it also includes primary legal research such as "research history of Sec. 216(b) of FLSA" and clerical work such as "check citations for accuracy, do table of contents" that should not be billed at Rossiello's rate. Instead, the Court reduces that number by one-third and awards 15.99 hours for the reply brief. Accordingly, the total amount of attorney time awarded for briefing the appeal of the first fee petition is 50.54 hours, which the Court considers reasonable and even generous under the circumstances.

GDF does not object to Rossiello's preparation for oral argument on the appeal which it calculates as 3.76 hours. GDF, however, does object to entries on 4/8/11, 6/7/11, 6/9/11, 9/10/11, 10/7/11, 10/14/11, 10/15/11 and 10/15/11 arguing that those entries involve clerical work and should be disallowed. [Dkt.#239], at 13. The Court has reviewed each of the entries identified by GDF and disagrees that those entries involve solely clerical work.

Based on the Court's calculations, Rossiello spent 4.63 hours preparing for the oral argument and on some other tasks objected to by GDF as identified above, including corresponding with his client about the appeal and finalizing his time sheets and billing. The Court does not find this time excessive and will award 4.63 hours of attorney time for preparing for oral argument and performing other tasks.

Therefore, the Court awards 55.17 hours of attorney time in total for the appeal of the district court's decision on the first fee petition. By comparison, GDF's attorneys billed 170 hours on the appeal of the district court's decision on the first fee petition, more than three times the hours the Court is awarding Rossiello, and they only had to write one brief as the appellee. Filing and briefing an appeal as the appellant is not an easy thing to do and generally requires more time than filing a brief in the district court.

Based on all of the circumstances of this case, the Court finds that 55.17 hours of attorney time for the appeal of the district court's decision on the first fee petition is reasonable.

### f. Hours for Second Fee Petition after Remand from the Seventh Circuit and the September 25, 2013 Hearing

Johnson and his lawyers seek 97.10 hours of time for preparation of the second fee petition and Renewed Motion for Attorneys' Fees presently before the Court. But, as previously discussed, there is a wrinkle. When the Seventh Circuit mandate issued in March 2012 and this case returned to the district court, Rossiello again was suspended from the practice of law. So, Rossiello hired Keith Hunt to submit the second fee petition and Renewed Motion for Attorneys' Fees. Hunt requests 79.30 hours of time for himself and an additional 17.80 hours of associate and paralegal time for preparing the second fee petition and Renewed Motion for Attorneys' Fees. GDF argues that this time is excessive. GDF Resp. [Dkt.#239], at 12.

In addition, Rossiello seeks 44.50 hours of time for writing the reply brief in support of the Renewed Motion for Attorneys' Fees and for preparing for and attending the hearing on September 25, 2013. Hunt seeks to be paid for an additional 16.03 hours of time preparing for and attending that hearing. So, the total amount of time sought by Johnson, Rossiello and Hunt for the second fee petition and Renewed Motion for Attorneys' Fees after remand from the

Seventh Circuit is 157.63 hours. That is more time than it took to try the case, brief post-trial motions and for the first appeal to the Seventh Circuit, combined. To paraphrase the Seventh Circuit, this is the tail wagging the tail of the dog, with much vengeance. *See Ustrak*, 851. F.2d at 988.

### (i) Hunt's Role in This Case

Hunt's role in this case and what he was hired by Rossiello to do is not completely clear. Hunt filed his appearance for Rossiello and Johnson on March 19, 2012, at a time when Rossiello was suspended from the practice of law. *See* [Dkt.# 220]. Rossiello's suspension ran from October 17, 2011 to July 17, 2012. Because of delays, including the parties' failure to complete the Local Rule 54.3 process, however, the Renewed Motion for Attorneys' Fees was not filed until September 4, 2012, a month and a half after Rossiello's suspension was lifted. Hunt prepared the second fee petition and Renewed Motion for Attorneys' Fees, but both Rossiello and Hunt signed that document. Rossiello signed as "Attorney for Plaintiff," and Hunt signed as "Attorney for Plaintiff and Rossiello." [Dkt.#235], at 29

Rossiello wrote and signed the reply brief in support of the Renewed Motion that was filed on October 30, 2012. Hunt did not sign the reply, nor do his time sheets show any time billed for that brief. Both Rossiello and Hunt appeared at the hearing held on September 25, 2013. Rossiello also submitted on his own behalf a letter dated October 7, 2013, citing supplemental authority for an award of pre-judgment interest and informing the Court that Johnson had cashed Rossiello's check payable to him in the amount of his full $10,000 recovery. *See* [Dkt.#265].

In March 2012, Rossiello could not have known that the Renewed Motion for Attorneys'

Fees would not be filed until September 2012, so perhaps it was reasonable for him to hire

another lawyer to prepare that Motion in a timely manner while he was not allowed to practice

law. After Rossiello's suspension was lifted, however, he resumed work on the second fee

petition and Renewed Motion for Attorneys' Fees with gusto. This is not a case in which a

lawyer hired another lawyer to represent him and his client on a fee petition and then remained

on the sidelines while the retained lawyer litigated the fee issue. If that were the case, the Court

might view Hunt's participation in this case a little differently. But that does not appear to be

what occurred here. Rather, Rossiello hired Hunt to do what he could not do while he was

suspended from the practice of law. Once that suspension was lifted, Rossiello was back in this

case representing himself and Johnson. Rossiello signed the Renewed Motion for Attorneys'

Fees, wrote the reply brief in support of the Renewed Motion for Attorneys' Fees, argued on his

own behalf at the September 25, 2013 hearing, and continued to follow-up and file supplemental

authority afterwards. The Court must consider Hunt's request for attorneys' fees against this

backdrop.

### (ii) Hunt's Time on the Second Fee Petition and Renewed Motion For Attorneys' Fees

GDF objects to all of Hunt's hours because they were not disclosed under Local Rule

54.3. GDF Resp. [Dkt.#239], at 13. The Court is not persuaded by this argument. Local Rule

54.3 sets forth a process that is intended to aid the Court in resolving fee petitions. The process

requires the parties to exchange information and records concerning the fees and costs being

sought and any objections thereto. The problem with GDF's waiver argument is that a

substantial portion of Hunt's fees were incurred in the course of preparing the second fee petition

and Renewed Motion for Attorneys's Fees and thus after the Local Rule 54.3 exchange of information process. In addition, both GDF and Hunt failed to comply with and complete the Local Rule 54.3 process, so GDF is in no position to point a finger at Hunt for not complying with the Local Rule.

Next, and before considering the total number of hours reasonably expended on the second fee petition, the Court must address a host of time entries submitted by Hunt that do not pass muster. Hunt's time entries on 3/1/12, 3/2/12, 3/14/12, 3/15/12, 3/16/12, 4/5/12, 4/10/12, 4/11/12, 4/22/12, 4/23/12, 4/24/12, 4/25/27, 4/27/12, 5/16/12, 6/2/12, 6/20/12, and 8/20/12 are either "corresponding with client," "email to/from client," "email to/from opposing counsel," or "email from USDC." These time entries total 4.70 hours and lack sufficient description for the Court to understand what work was performed and if such work is compensable. It would have been easy for Hunt to include in these entries a short description of the subjects he discussed on these calls or in these emails with Rossiello (who is listed as Hunt's client on his billing records), opposing counsel or "the USDC." Without that information, the Court has no idea whether the time is compensable. Because these entries are vague and the Court is unable to figure out what work was performed, they will not be allowed. *See Lopez*, 2007 WL 4162805, at *5 ("[T]he applicant for fees must provide sufficient description of the type of work performed."). Therefore, Hunt's hours are reduced by 4.70 hours.

In addition, Hunt's time entries on 4/10/12, 4/11/12, 4/20/12, 4/23/12, 4/25/12, 5/1/12, 5/10/12, 5/14/12, 5/17/12, 6/19/12, 8/7/12, and 8/29/12 contain compound descriptions of the work performed, which include vague descriptions like "email to/from client," "email to/from opposing counsel," or "conferring with opposing counsel," as well as somewhat more specific

29

descriptions of other work performed. These compound time entries total 42.40 hours of work performed. For the reasons discussed above, the Court will not allow the time for vague entries. Instead, the Court has gone through each entry, identified the number of tasks included in the compound entry, divided the number of hours billed by the number of tasks, and then subtracted the pro rata portion of time allocable to the vague entries.

For example, the time entry on 4/23/12 is for 1.40 hours of work performed, and counsel described the work as "email to/from client; preparing letter to opposing counsel with objections; analyzing 54/11 [sic?] requests." Because there are three tasks described, the Court will allocate .47 hours for each task (1.40 divided by 3) and not allow .47 hours for the task with the vague description ("email to/from client"). Using that same formula on the remaining compound entries with partially vague descriptions identified above, the Court will disallow an additional 20.38 hours for the compound entries with similar partially vague descriptions.

In addition to his own billable time, Hunt seeks 17.80 hours of associate and paralegal time. All of the associate and paralegal hours submitted are vague, appear to be for work that is duplicative of time billed by Hunt and, under the circumstances of this case, are not chargeable in the preparation of the second fee petition and Renewed Motion. For example on 3/19/12, 3/20/12, 3/21/12, 4/9/12, 4/11/12, 5/15/12, 6/19/12, 6/21/12, 7/17/12 and 8/7/12, associate and paralegal time entries are described as "analyzing court order resetting status" and "analyzing correspondence from client." It is not clear that these tasks require any "analysis;" they appear to be clerical, file-keeping or paper-pushing tasks.

In addition, there are time entries for "analyzing the attorney's lien act and case history" and researching and preparing a memorandum "regarding awards of attorneys' fees and abuses

of judicial discretion" on 3/19/12 and 3/20/12, respectively. Given that Hunt came into this case after the Seventh Circuit's remand, the Court finds that background memoranda and research on abuses of judicial discretion in fee awards are not chargeable in this Renewed Motion. The Seventh Circuit had resolved those issues. Moreover, research on attorney's liens does not appear to be in furtherance of Johnson's second fee petition. To the extent that work was done for Rossiello's or Hunt's own benefit, it certainly is not chargeable to GDF. There also is a time entry by an associate on 5/14/12 for "preparing a billing spreadsheet" that has no context. The Court, therefore, declines to award any associate and paralegal time submitted by Hunt for these tasks.

At this stage in the analysis, the Court has reduced Hunt's time by 25.08 hours and eliminated the associate and paralegal time he submitted, which leaves Hunt's request at 54.22 hours for the preparation of the second fee petition.[12] This still is excessive given the circumstances of this case. The Court recognizes that Hunt needed to familiarize himself with the history and procedural posture of the case, and he also had to engage in the Local Rule 54.3 process (or attempt to do so) during a time when Rossiello arguably was unable to do that himself. It reasonably could have taken Hunt more time than it would have taken Rossiello to prepare the second fee petition and Renewed Motion for Attorneys' Fees in this case. Still, it should not have taken Hunt 97.10 hours or even 54.22 hours to prepare and submit the second fee petition and Renewed Motion for Attorneys' Fees. True to form, GDF argues that the Court should "deny Hunt's outrageous request outright" or award Hunt only the same 1.6 hours for

---

[12] The Court's calculation is as follows: 97.10 total hours minus 25.08 hours of Hunt's time and 17.80 hours of associate and paralegal time equals 54.22 hours.

preparing the fee petition that GDF argued the Court should award Rossiello, an argument the Court already has rejected. GDF Resp. [DE#239], at 12.

As far as the Court can tell, Hunt billed 13.50 hours for tasks related to the Local Rule 54.3 process. As mentioned above, the parties did not complete the joint statement required by Local Rule 54.3(e), but the Court cannot fairly say that was all or even any of Hunt's fault, or that Hunt was any more to blame than GDF. The Local Rules provide that either party can file a motion for instructions with the Court if they are stymied in their attempt to complete the Local Rule 54.3 process; neither party did that here. Giving Hunt the benefit of the doubt, the Court will allow his 13.50 hours spent on the Local Rule 54.3 process.

The balance of Hunt's time, or 40.72 hours (54.22 hours minus 13.50 hours), apparently was spent preparing the second fee petition and Renewed Motion for Attorneys' Fees or on tasks related to that project. Many of Hunt's time entries in August and September 2012 (the Renewed Motion for Attorneys' Fees was filed on September 4, 2012), however, state simply "working on fee petition" or "researching and preparing fee petition." There are other time entries for conferring or meeting with client "to discuss strategy" that also are not very enlightening.

Even taking into account that Hunt was new to the case, it is difficult to justify an award of more than 20 hours of time for preparing the second fee petition and drafting the Renewed Motion for Attorneys' Fees when the Court found that 20 hours was a reasonable amount of time for the first fee petition. Hunt's very general time entries provide the Court with no help in understanding what he did and why it took him so much time to do it.

In addition, Hunt's 29-page Renewed Motion for Attorneys' Fees is overkill. *See* [Dkt.#235]. In the Renewed Motion, Hunt reargues issues that already had been decided by the Seventh Circuit, such as whether, on remand, the Court should compute Rossiello's fees using the lodestar method without regard to Rossiello's contingent fee agreement with Johnson. The Seventh Circuit decided that issue in Rossiello's favor in *Pickett*, 664 F.3d at 640-641. Hunt also rehashes the history of the case and much of what the Seventh Circuit had to say about the fact that Johnson won the case. In other words, a good portion of the Renewed Motion for Attorneys' Fees filed by Hunt fights battles that Rossiello already had won. That was unnecessary. If Hunt truly felt he had to rehash for the court much of what Rossiello previously had briefed, he could have attached those earlier briefs to the Renewed Motion For Attorneys' Fees or incorporated the arguments by reference. He did not have to rewrite them.

Taking all of this into account, the Court cannot in good conscience award Hunt more than 20 hours for his work submitting the second fee petition and Renewed Motion for Attorneys' Fees. If Rossiello had done the work himself (as he could have done once his suspension was lifted), the Court would not have awarded him more, or perhaps even as much, time for the second fee petition as for the first fee petition. And Hunt has given the Court no good reason to award him so much more time than it would have awarded Rossiello. Twenty hours is about one-half the 40.72 hours the Court calculates Hunt billed for the second fee petition and Renewed Motion for Attorneys' Fees. That seems reasonable given the overly long Renewed Motion for Attorneys' Fees and the vague and duplicative time entries, while also acknowledging that it would have taken Hunt a littler longer than it would have taken Rossiello to prepare the second fee petition.

### (iii) Hunt's and Rossiello's Post-Hearing Submissions

As discussed above, after the Court held a hearing in this case on September 25, 2013, Rossiello and Hunt submitted additional time each worked on this matter up to and including the hearing. Rossiello seeks an additional 44.50 hours, and Hunt seeks an additional 16.03 hours. These requests are excessive.

Rossiello says he spent 25.67 hours researching and drafting the reply brief in support of the Renewed Motion for Attorneys' Fees. But Rossiello cites new cases and raises new arguments in his reply brief that were not cited or raised in the Renewed Motion prepared by Hunt. If Rossiello did not want to stand on Hunt's opening Renewed Motion, he should have written it himself. As noted above, Rossiello's suspension from practice was lifted on July 17, 2012. GDF Resp. [Dkt.#239-14], Ex. L at 3. The second fee petition and Renewed Motion for Attorneys' Fees were not filed until September 4, 2012. Rossiello could have included in the initial brief the new arguments he raised in the reply, or he could have asked Hunt to include them in what he submitted.[13]

Further, a full three pages of the reply brief are devoted to Rossiello's new and misplaced argument that the Court should hold a fairness hearing to "adjudicate and approve the fee and adequacy of the recovery to Johnson." Johnson's Reply [Dkt.#241], at 13-16. This request that

---

[13] On June 19, 2012, less than a month before Rossiello's suspension from practice was to expire, Hunt, on Rossiello's behalf, filed an agreed motion to extend the time for the parties to complete the Rule 54.3 process. Per the parties' request, the Court set the date for filing the second fee petition and Renewed Motion for Attorneys' Fees as August 21, 2012, a month after Rossiello was reinstated. *See* [Dkt.##229, 230]. Another agreed motion for an extension of time was filed on August 20, 2012, and the Court again extended the date for filing the second fee petition to September 4, 2012. *See* [Dkt.##232, 234].

the Court approve the adequacy of Johnson's recovery apparently is born of Rossiello's desire to insulate himself from any complaint from Johnson concerning his dealings with Rossiello. That has no place in the second fee petition, and the Court cannot discern from Rossiello's time sheets how much time he spent on that argument. The Court will award Rossiello five hours for the preparation of the reply brief. That is the amount of time that should have been required to reply to GDF's response to Johnson's Renewed Motion for Attorneys' Fees.

Finally, with regard to preparation for the September 25, 2013 hearing, both Rossiello's and Hunt's requests are excessive and unreasonable. Hunt requests 13.60 hours to prepare for the hearing, and Rossiello appears to have billed 13.16 hours preparing for the hearing. Some portion of this time apparently involved Hunt preparing Rossiello to "testify" at this hearing. That also was unnecessary overkill. As counsel for Johnson, the Court afforded Rossiello the opportunity to argue his and his client's case concerning the attorneys' fees requested. Rossiello did so fully and completely. It was not necessary for Rossiello to "testify" about anything. The hearing lasted four hours, and the Court will award four hours to Rossiello and Hunt for their attendance at the hearing. The Court will allow another four hours for Rossiello and Hunt to prepare for the hearing. Therefore, for the time submitted after the hearing in this matter, the Court will award an additional 13 hours to Rossiello (inclusive of the time spent on the reply brief) and an additional eight hours to Hunt.

For all of the reasons discussed above, the Court, therefore, awards Hunt a total of 41.50 hours for the time he spent during the Local Rule 54.3 process, drafting the second fee petition and Renewed Motion for Attorneys' Fees, and preparing for and attending the hearing. The Court

also awards Rossiello 13 hours for his work on the reply brief and preparing for and attending the hearing.

In summary, the Court has reviewed in detail all the time sheets submitted by both parties in conjunction with the second fee petition and Renewed Motion for Attorneys' Fees and any objections thereto. For all of the reasons explained herein, the Court awards 89.53 hours of attorney time for the pre-trial and trial phase, 16.02 hours for post-trial motions, 11.18 hours for the first appeal, 46.57 hours for the first fee petition, 55.17 hours for the second appeal (which was the appeal of the district court's decision on Johnson's first fee petition), 33.50 hours for the second fee petition and Renewed Motion for Attorneys' Fees, and 21 hours for the additional time submitted after the hearing to account for the time Rossiello worked on the reply brief and the time that Rossiello and Hunt spent preparing for and attending the September 25, 2013 hearing. In total, the Court awards 272.97 hours of attorney time broken down as follows: 230.22 hours for Rossiello, 1.25 hours for Petrine Nielson, and 41.50 hours for Hunt.[14]

### 2. Hourly Rate

After determining the number of hours "reasonably expended," the district court must determine a "reasonable hourly rate." *Hensley*, 461 U.S. at 433. The presumptive hourly rate is the actual billing rate an attorney typically receives for similar litigation. *See Moore v. Watson*, 2013 WL 1337153, at *4 (N.D. Ill. March 29, 2013). However, there are situations, as in this case, in which the attorney has little evidence of an established market rate because the attorney most often relies on contingent fee arrangements or statutory fee awards. *Id.* In these types of cases, a court must evaluate the "next best evidence" of the attorney's market rate — "evidence of

---

[14] GDF did not object to the 1.25 hours Petrine Neilson billed.

rates similarly experienced attorneys in the community charge paying clients for similar work and evidence of fee awards the attorney has received in similar cases." *Pickett*, 664 F.3d at 640.

Johnson and Rossiello argue that the rates charged by Rossiello and his associates are reasonable based on their skill, experience, and the rates charged by similar attorneys in the Chicago legal market. *See* Johnson's Renewed Motion for Attorneys' Fees [Dkt.#235], at 15-20. In this case, Rossiello requests historical hourly rates of between $540 and $620 for himself and $275 for his associates.[15] In support of these rates, Rossiello submitted an affidavit in which he asserts that he works mostly on a contingency basis, but that he is familiar with the Chicago market for attorneys' fees and that, in his opinion, rates of between $540 and $620 are the market rates over the period of time in question for an attorney with his experience. *See* Rossiello Affidavit [Dkt#235-5]. Rossiello's affidavit also contained a list of recent cases — only some of which involved FLSA claims — in which he claims he was awarded hourly rates ranging between $540 and $620. *Id.*

Johnson also relies on the Seventh Circuit's opinion in *Pickett* to argue that the rates requested in this case should be accepted by this Court because "this was substantially the same evidence submitted by Pickett in the district court." Johnson's Renewed Motion for Attorneys' Fees [Dkt.#235], at 18. In *Pickett*, the plaintiff employee recovered damages of $65,000 in a Title VII retaliation suit against the defendant employer. 664 F.3d at 638. The plaintiff petitioned the district court for attorneys' fees in the amount of $131,655.88. *Id.* The district court granted the motion in part and denied it in part and awarded $70,000 in fees. *Id.* The plaintiff appealed, and the Seventh Circuit vacated the fee award and remanded with instructions. *Id.* at 654-655.

---

[15] GDF does not object to the associate hourly rate of $275.

Some of the Seventh Circuit's observations in *Pickett* are instructive here. In *Pickett*, Rossiello sought an hourly rate of $592. The district court rejected that rate as not supported by the record, and the Seventh Circuit agreed, saying that "[a]lthough plaintiff provided some evidence that supports the requested rate, it is undeniable that substantial evidence supports much lower rates." *Pickett*, 664 F.3d at 646.[16] In *Pickett*, the district court had determined that $400 was a reasonable hourly rate. The Seventh Circuit did not "pass judgment on whether $400 is reasonable hourly rate for Rossiello." *Id.* at 652. Rather, the Seventh Circuit took issue with some of the reasons given for the reduction in rate. *Id.*

Earlier in this case, when examining the first fee petition, the district court concluded that Rossiello did not establish his actual billing rate because the evidence he presented did not show how much he was actually paid and for what kind of work, and the Seventh Circuit concluded "[t]hat was in the district court's discretion." *Johnson*, 668 F.3d at 933. Rossiello has not cured that problem in this Renewed Motion.

Rossiello has filed numerous fee petitions in the district court and has appealed fee awards based on hourly rates ranging between $280 and $375 with varying degrees of success. *See, e.g., Curtean v. Federal Mortgage, Inc.*, 2005 WL 1661992 (N.D. Ill. July 2005) (reducing Rossiello's rate from what appears to be a requested rate of $525 to $375); *Small v. Richard Wolf Medical Instruments Corp.*, 264 F.3d 702 (7th Cir. 2001) (affirming the district court's reduction of Rossiello's hourly rate from $424 to $300); *Connelly v. National School Bus Serv.*, 177 F.3d 593 (7th Cir. 1999) (affirming the district court's reduction of Rossiello's hourly rate from $320 to

---

[16] In support of the second fee petition at issue in this case, Johnson also submitted some of the affidavits the plaintiff and Rossiello had submitted in *Pickett*. *See* [Dkt.#236-6].

$285); *Uphoff v. Elegant Bath, Ltd.*, 176 F.3d 399 (7th Cir. 1999) (affirming the district court's reduction of Rossiello's hourly rate from $320 to $280); *Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544 (7th Cir. 1999) (affirming the district court's reduction in the number of hours Rossiello reasonably billed, his hourly rate from $320 to $280, and his lodestar).

Rossiello also has submitted some evidence that he was awarded a $620 hourly rate in 2010. *See Maksymowicz v. Zoom Graphics, et al.*, 2009 C 5365 (N.D. Ill.) (9.5 hours at $620 per hour equals $5,890 awarded in attorney's fees). However, there is no explanation in that case concerning how the rate was derived, what work was performed, or what time that encompassed. With such a small total fee award, it was not worth the defendant's trouble or expense to object, and the district court did not engage in any analysis of the $620 hourly rate. While the higher rate will be considered in the Court's analysis, without more explanation, that rate is less probative.

A closer analysis of some of Rossiello's bills in other cases, which were included as evidence in support of Rossiello's affidavit in this case, does not support Rossiello's claim that courts have validated his supposed $620 hourly rate. Rossiello states that in *Davis v. Electrical Insurance Trustees*, 2006 C 5319 (N.D. Ill.), "he was paid a fully compensatory fee of $138,376.78 at the rate of $620 on October 20, 2008 following a two day jury trial. . . ." Rossiello Affidavit [Dkt#235-5], at ¶7(a). The attorney billing records in *Davis* show that Rossiello claimed his hourly rate was $540 in 2005, $595 in 2007 and $620 in 2008. *See* [Dkt.#235-9]. It is not clear if the defendant in *Davis* objected to Rossiello's fee petition or if the district court engaged in any analysis of Rossiello's claimed hourly rates, and again, there is no explanation as to why a higher rate was awarded, how the rate was derived, what work was performed, or what time that encompassed. Rossiello also attached to his affidavit billing

records in *James v. Illinois Mentor*, 2005 L 14284 (Cir. Ct. Cook County Ill.). [Dkt.#235-10]. In *James,* Rossiello's hourly rate was $540 in 2005 and $585 in 2007. *Id.* The billing records submitted in *Davis*, however, show Rossiello's rate in 2007 as $595 per hour, or $10 more per hour than he said he charged per hour in *James* in 2007. [Dkt.#235-9].

In addition, the time records Rossiello submitted in this case reflect a $625 hourly rate beginning on November 22, 2010. *See* [Dkt.#235-2], at 27. And on October 23, 2012, Rossiello's billing records show an hourly rate of $755 per hour. *See* [Dkt.#261], at 2. Complicating matters further, the Proposed Order Rossiello submitted to be entered by the Court in this case purports to award Rossiello $625 per hour for time billed in 2007, 2012 and 2013, and $620 per hour for the rest of the time he billed in this case in 2005, 2006, 2008, 2010 and 2011. *See* Proposed Order [Dkt.#266].[17]

What the Court concludes from all of the evidence submitted here is that Rossiello's hourly rate in previous similar cases — and in this case — is all over the map and not persuasive for the purpose of determining Rossiello's *actual* billing rate. Prior fee awards to Rossiello, which range from $280 to $620 in cases with both contested and uncontested fees, have some value in helping the Court to determine a market rate in this case, but they are not conclusive or determinative of Rossiello's actual billing rate in this case. Rossiello simply has not established an actual billing rate that the Court can use with confidence.

--------

[17] In preparing his Proposed Order in this case, Rossiello apparently overlooked the fact that his billing records show the $625 hourly rate beginning on November 22, 2010, not in 2007. *See* [Dkt.#235-2], at 27. And, of course, there is no way to reconcile the ostensible $625 hourly rate in 2007 with the $595 hourly rate for the same year in *James* or the $585 hourly rate for that year in *Davis*. Rossiello Affidavit, [Dkt.#235-5], at ¶¶ 7(a), 7(b); [Dkt.##235-9 and 235-10]. Even if Rossiello's intent was to submit a proposed order that awarded him his current market rate for all the time billed in this case, his Proposed Order effectively contains two supposed "current" rates of $625 and $620 per hour.

The Court, therefore, must turn to "the next best evidence" of the market rate for comparable work performed by an attorney like Rossiello. For attorneys who, like Rossiello, derive a substantial proportion of their income from contingency fees and court awarded fees, courts consider rates charged by other attorneys of similar skill, experience, and credentials and other court awards of fees. *See Muzikowski v. Paramount Pictures Corp.*, 477 F.3d 899, 909-910 (7th Cir. 2007). Rossiello attached affidavits from several Chicago attorneys attesting to the reasonableness of his requested rates based on their familiarity with the rates the affiant charges as well as the rates charged generally in employment-related cases. A district court is "entitled to determine the probative value of each submission and must arrive at it own determination as to a proper fee." *Batt v. Micro Warehouse, Inc.*, 241 F.3d 891, 895 (7th Cir. 2001) (internal quotations and citation omitted).

Rossiello included only four affidavits that are specifically submitted in this case — from Richard Schnadig, George Pontikes, Vicki Lafer Abrahamson, and Keith Hunt. *See* [Dkt.##235-6, 235-11]. The other affidavits were submitted in other cases and were not prepared specifically for this case. The Schnadig, Pontikes, Abrahamson, and Hunt affidavits generally opine on the reasonableness of Rossiello's time and billing rates based on the affiants' knowledge of the current range of market rates. The Seventh Circuit, however, previously has criticized third party affidavits that merely opine on the market rate. *See Batt*, 241 F.3d at 895. Instead, the Seventh Circuit has indicated a preference for affidavits that provide evidence as to what comparable attorneys actually charge for similar services. *Id.*

In his affidavit, Schnadig, a partner in the Vedder Price law firm, states that an hourly rate between $450 and $550 is reasonable for Title VII and FLSA cases and that his "current hourly

rate is $545 from fee-paying clients, all of which are corporations and businesses." Schnadig

Affidavit [Dkt#235-6], K-1 at ¶5. As Schnadig says in his affidavit: "In particular, I am familiar

with the rates charged by defense attorneys with nearly 40 years of litigation experience, who

represent hourly-charged paying clients in defending employment discrimination FLSA cases.

The current rate for lawyers in this firm with between 35 and 40 years experience in employment

discrimination suits in this District is between $450 and $550."   Schnadig Affidavit [Dkt#235-6],

K-1 at ¶¶4-5.

The Pontikes affidavit offers no evidence of what a comparable attorney charges for

similar services. Instead, Pontikes merely offers an opinion that Rossiello's hours and billing rates

are reasonable.  *See* [Dkt#235-6], K-2 at ¶7.  The Seventh Circuit has rejected this type of

evidence as not probative. *See Batt*, 241 F.3d at 895.

The Abrahamson affidavit suffers from similar problems.  Abrahamson is a partner in

Abrahamson, Vorachek & Levinson which, she says, handles employment cases mostly from the

plaintiff/employee's perspective.  Although she states that her current billing rate is $550 without

trial, Abrahamson's affidavit is not particularly helpful because she also mentions that she

charges discounted rates for particular matters but does not elaborate on the circumstances that

justify a discount, the amount of the discount that she provides to clients, or how often she does

so, nor does she identify any FLSA cases in which she has been awarded a $550 hourly rate.  *See*

[Dkt.#235-6].

These affidavits submitted by Rossiello are of limited probative value because they

generally opine on the reasonableness of Rossiello's rate but do not offer concrete evidence of

actual rates charged to clients in FLSA cases.  In *Pickett*, the Seventh Circuit recognized that

substantially similar third party affidavits provided some support for a rate in the range requested by Rossiello, but they also provided ample support for a lower rate. 664 F.3d at 646.

In addition, while Rossiello argues that his hourly rate should reflect the fact that he is an experienced lawyer with 42 years spent litigating and trying FLSA cases, his rate also should reflect the fact that, as noted earlier in this Memorandum Opinion and Order, Rossiello does a great deal of primary legal research and drafting himself without having that work done by more junior lawyers with lower billing rates. Although Rossiello may be more efficient than less experienced lawyers in performing some of these kinds of tasks, and thus his clients arguably get more for the dollar when he does this kind of work for them, a senior lawyer who chooses to do this kind of work on a regular basis at a high hourly rate still has the burden to establish that is a market rate for that work. Rossiello has not done that. To the extent Rossiello compares himself to lawyers such as Schnadig or Abrahamson, both of whom are partners in larger firms and may utilize associates billing at lower rates to do the work Rossiello does himself, the hourly rates charged by those more senior lawyers are less persuasive as comparators for Rossiello.

If Rossiello had provided sufficient evidence establishing a market rate, then GDF would have the burden of demonstrating why a lower rate should be awarded. *See People Who Care*, 90 F.3d at 1313. In support of its position, GDF argues that Rossiello's alleged market rate is excessive and not supported by the evidence. GDF says that Rossiello's rate should be between $405 and $465. GDF Resp. [Dkt.#239], at 14-15. GDF's evidence consists of citations to previous cases in which courts reduced Rossiello's hourly rate. *See Curtean v. Federal Mortgage Inc.*, 2005 WL 1661992, at *6 (N.D. Ill. July 13, 2005) (collecting cases on Rossiello's fees); *Dormeyer*, 1999 WL 608771, at *1. GDF also submitted evidence that its counsel in this case

charged $300 per hour for work performed in 2007 and 2008 and $325 per hour for work performed in 2009 and 2010. Most notably, in its correspondence with Hunt pursuant to Local Rule 54.3, GDF asserted that Rossiello's rate should not be more than $425. *See* 4/20/13 Ltr. [Dkt.#235-22], at 3. This Court, therefore, interprets GDF's position as a concession that an hourly rate of $425 would be a reasonable current market rate for Rossiello in this case.

Fee awards from prior similar cases also are relevant to the Court's determination of a reasonable hourly rate. *See Spegon*, 175 F.3d at 557. A survey of recent fee awards by district courts in this Circuit in FLSA cases reveals a much lower range of hourly rates than Rossiello is requesting. *See, e.g., Ingram v. World Security Bureau, Inc., et al.,* 2013 WL 6664782 (N.D. Ill. Dec. 17, 2013) (after settlement of an FLSA case, plaintiffs' counsel petitioned the court for attorneys' fees and costs and the court awarded a reduced hourly rate of $425 for the partner and lead attorney and reduced hourly rates of $250 and $225 for the junior attorneys); *Dela Riva v. Houlihan Smith & Co., Inc.,* 2013 WL 5348323 (N.D. Ill. Sept. 24, 2013) (in a FLSA case in which the parties entered into, and the court approved, a consent decree, plaintiffs' counsel petitioned the court for attorneys' fees and costs and the court awarded a reduced hourly rate of $450 for the lead attorneys and a reduced hourly rate of $300 for the junior attorney); *Lizak v. Great Masonry, Inc.*, 2010 WL 3001906 (N.D. Ill. July 29, 2010) (in case alleging violations of the FLSA, the Illinois Minimum Wage Law, and Illinois Employee Classification Act, the court awarded a hourly rate of $300 for lead attorney and reduced rates of $225, $200, $150, and $75 for associates and paralegals); *Riddle v. National Sec. Agency, Inc.*, 2010 WL 655443 (N.D. Ill. Apr. 23, 2010) (for litigation of FLSA and IWPCA claims, court awarded fees at an hourly rate of $245, $190 and $100, and $90 for the lead attorney, associates, and paralegal); *Goodale v. George*

*S. May Intern. Co.*, 2010 WL 2774013 (N.D. Ill. July 14, 2010) (for litigation of FLSA claims, court awarded fees at an hourly rate of $275 and $75 for the work of a lead attorney and paralegal); *Garcia v. R.J.B. Properties, Inc.*, 2010 WL 2836749 (N.D. Ill. July 19, 2010) (for litigation of FLSA claims, court awarded fee at an hourly rate of $325 for a lead attorney); *Garcia v. Oasis Legal Finance Operating Co.*, 608 F. Supp. 2d 975 (N.D. Ill. 2009) (for litigation of FLSA claim, court awarded fees at an hourly rate of $300 and $185 an hour for the work of a lead attorney and associate).

It is interesting to note, based on the survey (admittedly not exhaustive) of other FLSA cases in this Circuit, that district courts recently have not awarded an hourly rate higher than $450 in similar cases. In two cases decided in late 2013, the lead plaintiff attorneys were awarded hourly rates of $450 and $425 per hour, respectively. In this case, there actually are three concrete examples of a market rate for legal services rendered in FLSA cases — Keith Hunt charged Rossiello $475 per hour to represent Johnson and Rossiello in this case, but only with respect to the second fee petition (*see* Hunt Affidavit [Dkt.#235-11]); the Abrahamson Vorachek & Levinson law firm charged Rossiello $355 per hour to perform work in this case in 2010 (*see* Abrahamson Affidavit [Dkt.#235-6]); and Donald Rothschild, GDF's counsel in this case, charged GDF an hourly rate of $300 in 2007 and 2008 and $325 in 2009 and 2010 (*see* 4/12/12 Ltr. from D. Rothschild to K. Hunt [Dkt.#235-22], at 3). Rothschild's current hourly rate is unknown.

It is the Court's task to determine a reasonable market rate taking into account all of the evidence submitted by both parties. There is not enough evidence for the Court to determine a reasonable market rate for Rossiello for each year during which this litigation was pending

beginning in 2006. Therefore, based on all of the data points discussed herein and, importantly, GDF's concession that "[b]ased on all this evidence, Mr. Rossiello's rate should be no more than $425.00" ([Dkt.#235-22], at 3), the Court concludes that $425 is a reasonable current market rate for both Rossiello and Hunt in this case and will award that hourly rate for all of the time billed by them. An hourly rate of $425 falls within the higher range of rates recently awarded by other district courts in FLSA cases. The $425 hourly rate also is within the range of rates proffered by Schnadig and Abrahamson, considering Abrahamson's acknowledgment that her firm discounts her $550 hourly rate in particular matters and that she charged Rossiello $355 per hour for her work in this case, and the $450 to $550 hourly rates charged by lawyers in Schnadig's much larger firm with experience comparable to Rossiello.

Hunt submitted absolutely no evidence of his current market rate. But since Hunt effectively was standing in for Rossiello for the short period of time he was involved in this case, the Court will award him the same rate as Rossiello.

Therefore, for the reasons explained herein based on the Court's calculations of the hours reasonably expended multiplied by the reasonable hourly rates, the total lodestar in this case is $115,824.75.[18]

## B. Adjustment of the Lodestar

The Court has done its best under the circumstances to determine the hours reasonably expended and a reasonable hourly rate in this case as the Seventh Circuit directed. *See Johnson*, 668 F.3d at 934 ("[T]his opinion addresses only the district court's lodestar and costs

---

[18] The total award is broken down as follows: 230.22 hours for Rossiello at an hourly rate of $425 equals $97,843.50; 1.25 hours for Petrine Nielson at an hourly rate of $275 equals $343.75; 41.50 hours for Hunt at an hourly rate of $425 equals $17,637.50.

calculations. That process will need to be undertaken anew for the reasons indicated. A determination of the hours reasonably expended and the reasonable hourly rate is a matter addressed, in the first instance, to the district court's discretion."). That, however, does not end the analysis.

Once the lodestar has been determined, a court may adjust the award based on a number of factors, including "the complexity of the legal issues involved, the degree of success obtained, and the public interest advanced by the litigation." *Gastineau v. Wright*, 592 F.3d 747, 748 (7th Cir. 2010). "The standard is whether the fees are reasonable in relation to the difficulty, stakes, and outcome of the case." *Id.* (quoting *Connolly v. Natl. School Bus Serv., Inc.*, 177 F.3d 593, 597 (7th Cir.1999)); *see also Hensley*, 461 U.S. at 430 n.3. GDF contends that Johnson's degree of success in this case was minimal, and based on other similar cases and taking into account Rossiello's reputation, among other arguments, GDF argues that Rossiello's lodestar should be reduced to a sum no greater than $15,000. *See* [Dkt.#239], at 16-20. Not surprising, Johnson, Rossiello and Hunt disagree and argue that no reduction is warranted. *See* [Dkt.#241], at 3-5, 9-10.

The Court now considers the question of what amount, if any, by which to adjust the lodestar in light of these factors. As the Seventh Circuit has noted, "[p]recision is impossible to reach in such calculations. . . ." *Sottoriva v. Claps*, 617 F.3d 971, 976 (7th Cir. 2010). The Supreme Court in *Hensley* counseled against "a mathematical approach comparing the total number of issues in the case with those actually prevailed upon." 461 U.S. at 435. The Seventh Circuit also has "rejected the notion that fees must be calculated proportionally to damages." *Anderson v. AB Painting & Sandblasting, Inc.*, 578 F.3d 542, 545 (7th Cir. 2009). A court is

directed to ask whether "the plaintiff achieve[d] a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award." *Hensley*, 461 U.S. at 434.   In so doing, the court "should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Id.* at 435; *see also Jaffee*, 142 F.3d at 414.

Rossiello has been criticized often by courts in this Circuit for running up large legal bills in cases in which his client has only a modest amount of recoverable damages. Courts in this Circuit also previously have sanctioned Rossiello for his litigation tactics. *See e.g.*, *Dormeyer v. Comerica Bank-Illinois*, 1999 WL 608771, at *1 (N.D. Ill. Aug. 6, 1999) ("Yet again, Earnest T. Rossiello has requested large fees after winning on a small FLSA claim. . . ."), *aff'd,* 223 F.3d 579 (7th Cir. 2000) (holding that the district court order awarding $6,216 in costs and attorney fees under FLSA, rather than the almost $350,000 requested, was appropriate); *Shea*, 1999 WL 138791, at *3 (stating that "this court is acutely aware that this case is not the first time a federal district court has suspected a possible manipulation or abuse of billing practices with regard to Shea's counsel [Rossiello] in a FLSA case"); *Uphoff*, 1998 WL 42312, at *3 (stating that "[t]his court having read many of Rossiello's fee motions is all too familiar with their format and content").

It is true that Johnson's recovery in this case is dwarfed by the attorneys' fees Rossiello and Hunt are seeking.  At trial, however, Rossiello achieved full victory for his client.  Johnson obtained all of his lost wages plus punitive damages.  The jury thought so little of GDF's defense that it awarded Johnson punitive damages of *four times* his award of lost wages.  In settlement of the first appeal, Rossiello also secured for Johnson liquidated damages that doubled his award of

lost wages and punitive damages. Johnson has received $10,000 from GDF that he would not have received had he not won this lawsuit. *See* 10/8/13 Letter from Rossiello [Dkt.#265]. Despite prevailing at trial and in two appeals, Rossiello has not been paid a penny for his successful representation of Johnson. *Id.*

Both Rossiello and GDF share responsibility for the amount of attorneys' fees generated by this litigation despite the relatively modest economic stakes. GDF forced Johnson and Rossiello to go to the Court of Appeals twice, completely capitulating by way of settlement the first time and losing decisively on the merits the second time. Neither side was reasonable in their willingness to compromise on either of the fee petitions submitted in this case. Their "joint statement" pursuant to Local Rule 54.3(e) states simply and unhelpfully: "[t]he parties have not been able to reach stipulations regarding hourly rates, or the amount of time sought by plaintiff." Parties' Local Rule 54.3 Statement Regarding Plaintiff's Motion for Attorneys' Fees [Dkt.#231]. Therefore, to the extent Johnson's and Rossiello's fee petitions took on a life of their own, GDF shares some responsibility for that situation.[19]

The Court has cut substantially the total amount of attorneys' fees that Johnson, Rossiello and Hunt are seeking in this case. But a close analysis reveals that most of the reductions are with respect to the huge amount of time requested for the two fee petitions. For the reasons discussed in this Memorandum Opinion and Order, the Court does not believe all of that time was

---

[19] In hindsight, the Court should not have accepted the parties' evasion of their responsibility under Local Rule 54.3, and it will not do so again in another case. The Court's job would have been made infinitely less difficult if it had insisted on a real Local Rule 54.3(e) statement from these parties. At the time the parties submitted their "joint statement," however, the Court was not aware of how unhelpful their submissions on the fee issues were going to be, the panoply of arithmetic errors that would be contained in those submissions, or the wide gulf that would exist between the parties' respective positions.

reasonably expended within the meaning of the Seventh Circuit's clear precedent in this area. As other judges have noted, courts have to be careful in reviewing the time spent on fee petitions to avoid spawning a cottage industry of attorneys' fee litigation that creates an incentive for cases never to end until a small fortune is generated on post-judgment fee petitions. *See Hensley*, 461 U.S. at 437 (holding that "[a] request for attorney's fees should not result in a second major litigation"); *Petersen*, 372 F.3d at 866 (finding that "a fee request should not spawn a second round of major litigation"); *Ustrak*, 851 F.2d at 937 (stating that fee litigation "can turn a simple civil case into two or even more cases – the case on the merits, the case on the fees, the case for fees on appeal, the case for fees proving fees, and so on ad infinitum, or at least ad nauseam").

Based on all of these considerations, the Court declines to reduce Rossiello's and Hunt's lodestar in this case. The Court already has adjusted Rossiello's and Hunt's lodestar for reasonableness so GDF's arguments that some of the same considerations justify another reduction are redundant and misplaced.

## C. Bill of Costs

Federal Rule of Civil Procedure 54(d)(1) provides that "costs — other than attorney's fees — should be allowed to the prevailing party." FED. R. CIV. P. 54(d)(1). Pursuant to 28 U.S.C. § 1920, a prevailing party may recover (1) fees of the clerk and marshal; (2) fees of the court reporter for printed or electronically recorded transcripts necessarily obtained foe use in the case; (3) fees and disbursements for printing and witnesses; (4) fees for exemplification and copies of paper necessarily obtained for use in the case; (5) docket fees under 28 U.S.C. § 1923; and (6) compensation of a court-appointed experts and interpreters. 28 U.S.C. § 1920; *Harney v. City of Chicago*, 702 F.3d 916, 927 (7th Cir. 2012). A district court should consider both whether the bill

of costs identified expenses of the type authorized by the statute and whether the costs were reasonably incurred. *Majeske v. City of Chicago*, 218 F.3d 816, 824 (7th Cir. 2000). The losing party has the burden of demonstrating that costs are not appropriate. *Harney*, 702 F.3d at 927.

Johnson requests $2,197.94 in costs, which includes $805 for filing fees; $180 for subpoenas fees; $151.42 for delivery of subpoenas and court filings; $242.20 for transcripts; $60 for court reporter fees; and $759.32 for copies. *See* [Dkt.#235-3], at 1-3. All of these costs are recoverable. Johnson also seeks reimbursement for $756.95 for work performed by Vicki Lafer Abrahamson to which GDF does not object.

GDF objects to Hunt's expenses of $83.64. GDF Resp. [Dkt.#239], at 15. The Court overrules GDF's objection and awards $83.64 in the copying costs sought by Hunt. The Court finds that the costs are reasonable and recoverable under Federal Rule of Civil Procedure 54 (d)(1) and 28 U.S.C. §1920. Therefore, the Court awards $3,038.53 in costs as requested in the Renewed Motion for Attorneys' Fees.

After the hearing in this matter, Rossiello and Hunt submitted additional time and expenses incurred after the filing of the second fee petition and Renewed Motion for Attorneys' Fees up to and including the hearing. In the supplemental submission, Hunt requested an additional $361.20 in photocopying costs. Such expenses are recoverable pursuant to 28 U.S.C. § 1920. Therefore, the Court awards the additional amount requested for a total of $3,399.73.

**D. Prejudgment Interest**

Finally, Johnson, Rossiello and Hunt seek prejudgement interest on the Court's award of attorneys' fees. An award of prejudgment interest is left to the sound discretion of the district court. *See United States v. Bd. of Educ. of Consol. High Sch. Dist. 230, Palos Hills, Ill.*, 983 F.2d

790, 799 (7th Cir. 1993). In cases involving violations of federal law, the Seventh Circuit has recognized that prejudgment interest "should be presumptively available" because "[w]ithout it, compensation is incomplete and the defendant has an incentive to delay." *Id.* (quoting *Gorenstein Enter., Inc. v. Quality Care–USA, Inc.*, 874 F.2d 431, 436 (7th Cir. 1989)).

"[P]rejudgment interest typically accrues from the date of loss or the date on which the claim accrued" in order to "put a party in the position that it would have been in had it been paid immediately." *Am. Nat. Fire Ins. Co. v. Yellow Freight Sys., Inc.*, 325 F.3d 924, 935 (7th Cir. 2003) (citations omitted). While neither Rossiello nor Hunt submitted any affidavits or evidence regarding the prevailing practice in this area of the legal services market in the Renewed Motion for Attorneys' Fees, they asked that the fee award be enhanced with prejudgment interest at the current prime rate of 3.25%. *See* [Dkt.#235], at 20. GDF acknowledged that an enhancement of the fee award would be appropriate but argued that the enhancement should be calculated from the date of the jury's verdict with 3.25% simple interest. *See* [Dkt.#239], at 15.

Although Rossiello and Hunt initially argued for a 3.25% prejudgment interest rate, Rossiello subsequently filed a Motion to Take Judicial Notice of Illinois Statute on Prejudgment Interest, arguing that the prejudgment interest rate should be 5%. *See* [Dkt.#251], at 1-2. In seeking a 5% prejudgment interest rate, Rossiello relies upon the Illinois prejudgment interest statute. *See* 815 ILCS 205/2. The Court, however, is not convinced that the Illinois prejudgement interest statute should govern here.

There is nothing in the Illinois statute that suggests it applies in this case. Rossiello cites no case that suggests the statute should apply in this case and offers no argument or reason why the statute applies other than that the Court should take judicial notice of it. In *Gorenstein v.*

*Quality Enterprises, Inc.*, 874 F.2d 431 (7th Cir. 1989), the Seventh Circuit suggested that district courts should use "the prime rate for fixing prejudgment interest where there is no statutory interest rate." 874 F.2d at 436. Accordingly, the Court will use the prevailing prime rate during the time since the first fee petition was filed, which both parties agree is 3.25%.

Rossiello also argues that any prejudgment interest award should accrue from the time when the services were performed until paid. *See* [Dkt.#241], at 12-13. The Court disagrees. As discussed above (*see supra* III.A.2), the Court is using the current market rate as the reasonable hourly rate in its lodestar analysis. By awarding the current market rate, the Court eliminated the need to calculate interest prior to entry of judgment or submission of the fee petition. *See Shea v. Galaxie Lumber & Construction Company, Ltd.*, 1999 WL 138791, at *4 (N.D. Ill. March 2, 1999) (recognizing that enhancement for the delay in payment is appropriate by either awarding the fees and costs using current attorney rates or past rates with interest) (citing *Smith v. Village of Maywood*, 17 F.3d 219, 221 (7th Cir. 1994)).

In a letter submitted to the Court, Rossiello conceded that, if the Court awarded a current market rate, then prejudgment interest should be assessed from August 10, 2010, when the first fee petition and motion for attorneys' fees initially was filed. *See* [Dkt.#265]. The Court agrees in large part and concludes that the date from which interest shall be deemed to accrue is 30 days after the date the first fee petition was submitted on August 10, 2010. *See* [Dkt.#168]; *see also Bd. of Educ. of City of Chicago v. Walker*, 800 F. Supp.2d 917, 927 (N.D. Ill. 2011) ("[T]he Court believes it is reasonable for the Board to have a period of time to review [movant's] fee petitions, like a client would have, without being charged interest.").

Therefore, the Court awards 3.25% prejudgment interest compounded annually from September 9, 2010 to the present to account for the delayed payment on Johnson's first fee petition and the second fee petition and Renewed Motion for Attorneys' Fees.

## IV.  CONCLUSION

For all of the reasons discussed in the Court's Memorandum Opinion and Order, plaintiff Robert Johnson's Motion for Attorneys' Fees and Costs Upon Remand from the Court of Appeals with Renewed Motion for Evidentiary Hearing and Proposed Order for New Award of Fees and Costs [Dkt.#235] is granted in part and denied in part.  The Court awards $115,824.75 in attorneys' fees and $3,399.73 in costs.

The parties shall meet and confer and within seven days submit an agreed proposed order to the Court with the appropriate calculation of prejudgement interest consistent with the findings in this Memorandum Opinion and Order.

It is so ordered.

_____
Jeffrey T. Gilbert
United States Magistrate Judge

Dated: February 5, 2014